SCHROEDER, and others, Plaintiffs-Respondents, v. CITY OF CLINTONVILLE, Defendant-Appellant.

Supreme Court

*No. 76–446. Submitted on briefs May 31, 1979.—*
*Decided June 29, 1979.*
(Also reported in 280 N.W.2d 166.)

For the appellant the cause was submitted on the brief of *Ralph M. Lauer* of Clintonville.

For the respondents the cause was submitted on the brief of *Steven D. Shambeau* of Waupaca.

CONNOR T. HANSEN, J. The City of Clintonville, a fourth-class city, owns the Clintonville Water and Electric Utility (CWE). Pursuant to the provisions of sec. 66.068, Stats., the Clintonville common council created a five-man commission to manage the utility.

The case presents a question of statutory construction and the facts are not in serious dispute. The plaintiffs contend that the statutes vest sole authority in the commission to set wages for employees of the utility. The city takes the position that the commission merely recommends the amount of the wages of the utility employees and that the amounts so recommended are subject to final determination by the common council.

In December, 1974, the commission took action to raise the wages of CWE employees by 10 percent, effective January 1, 1975. This increase was put into effect without submitting it to the personnel committee of the

city or the city council for approval. This wage increase came to the attention of the common council in April, 1975, at which time the council voted to rescind the 10 percent wage increase established by the commission and grant a six percent wage increase, as had been granted to other city employees. Adjustments were made in the utility employees' pay checks to accommodate this four percent variance and the utility employees accepted their pay checks under protest.

The employees filed a claim against the city for the additional four percent wage increase. The claim was denied and this action was commenced. The case was submitted to the trial court on a statement of facts.

In addition to the facts stated above, as exhibits the city submitted numerous excerpts from common council minutes dating back to 1966, which referred to votes by the common council either accepting the personnel committee's or utility commission's recommendation for a wage increase or referring an increase request to the personnel committee for a recommendation. The exhibits also include minutes of the personnel committee, a fact-finding committee formed by the common council to deal with employee financial matters, which contain recommendations that the council approve utility commission recommendations. In addition, the city submitted two 1968 letters from the commission to the mayor. In one letter the commission requested a wage increase "upon the approval of its superiors." The other letter requested approval of overtime payments. The following portions of the Clintonville City Code were also submitted to the trial court:

"8.08 APPOINTMENT OF MANAGER, COMPENSATION, AND BOND. The Board of Commissioners shall have power to appoint a manager or superintendent and fix his compensation, all subject to the confirmation, control and supervision of the Common Coun-

cil. The manager or superintendent shall file an official bond in the sum of Two Thousand Dollars ($2,000.00). "....

"8.10 POWERS AND DUTIES OF THE COMMISSION. The Commission shall have the entire charge and management of the public utility and shall supervise the operation thereof under the general control and supervision of the Common Council."

The city appeals from the judgment of the trial court awarding the plaintiffs-employees damages representing the amount of the additional four percent wage increase. The amount of the damages awarded is not at issue on this appeal.

The issue is whether the Clintonville Water and Light Commission has the authority to fix the compensation of the employees of the utility.

Sec. 66.068, Stats., provides that municipally-owned public utilities may be managed by a commission or, in lieu thereof, the board of public works. The pertinent sections of the statute are:

"... (1) In cities owning a public utility, the council shall and in towns and villages owning a public utility the board may provide for a nonpartisan management thereof, and create for each or all such utilities, a board of 3 or 5 or 7 commissioners, to take entire charge and management of such utility, to appoint a manager and fix his compensation, and to supervise the operation of the utility *under the general control and supervision of the board or council.* "....

"(3) The commissioners shall choose from among their number a president and a secretary. They may command the services of the city engineer and *may employ and fix the compensation of such subordinates as shall be necessary.* They may make rules for their own proceedings and for the government of their department. They shall keep books of account, in the manner and form prescribed by the transportation commission or public service commission, which shall be open to the public." (Emphasis added.)

"(7) In cities of the second, third or fourth class the council may provide for the operation of a public utility or utilities by the board of public works or by another officer or officers, in lieu of the commission above provided for."

And sec. 62.14(1), provides, in part:

". . . **Board of public works.** *(1)* How CONSTITUTED, TERMS . . . . The council, by a two-thirds vote, may determine that the board of public works shall consist of other public officers or persons and provide for the election or appointment of the members thereof, or it may, by a like vote, dispense with such board, in which case its duties and powers shall be exercised by the council or a committee thereof, or by such officer, officers or boards as the council designates. The words 'board of public works' wherever used in this subchapter shall include such officer, officers, or boards as shall be designated to discharge its duties."

These statutes, in some instances, recognize distinctions between the various classes of cities, towns and villages. While it could be argued that these statutory provisions are similarly applicable to all cities, towns and villages, nevertheless, since Clintonville is a city of the fourth-class, we are here only concerned with management of a municipally-owned public utility by a city of the fourth-class.

In support of its position, the city advances three principal arguments. First it argues that sec. 62.11(5), Stats., which sets forth the general powers of the common council, includes the authority to set wages for all municipal employees, including those of the utility. Secondly, the city contends that language included in sec. 66.068(1) which grants the commission the authority "to supervise the operation of the utility under the general control and supervision of the board or council" must be interpreted to mean that the council retains or is granted final authority to fix the wages of utility employees. To arrive at this conclusion it would inter-

pret the provisions of sec. 66.068(3) which provide that the commission "may employ and fix the compensation of such subordinates as shall be necessary" to mean that the commission can do so only if the common council so authorizes the commission to do so. Finally, the city argues that regardless of the statutes, it retained control over the wages of utility employees by the adoption of secs. 8.08 and 8.10 of the City Code which are hereinbefore set forth; and that the long-standing practice has been for the commission to seek approval of wage adjustments from the personnel committee and the common council. In support of this final contention the city seems to rely on sec. 66.068(7), which provides for the management of the municipally-owned utility by the board of public works in lieu of a commission, and on *Rice Lake v. United States F. & G. Co.*, 216 Wis. 1, 255 N.W. 130 (1934), and *Reetz v. Kitch*, 230 Wis. 1, 283 N.W. 348 (1939).

However the fact is that in this instance the city council opted to provide for the management of the utility under a commission as provided by sec. 66.068(1) and (3), Stats., and not by the board of public works as provided in sec. 66.068(7).

We find no previous case law authority in this state which has considered the exact question presented by this case. The language of sec. 66.068(3), Stats., is clear and unambiguous. It simply states that the commission "may employ and fix the compensation of such subordinates as shall be necessary." This specific statutory language was first enacted by the Laws of 1907, ch. 467. Except for being renumbered, it has remained substantively unchanged. Since sec. 66.068(3) is a specific statute relating to a particular subject it controls over any general statutory language contained in either sec. 62.11(5) or sec. 66.068(1).

The trial court in its decision made reference to an opinion of the State Attorney General. This opinion, 22 Op. Atty. Gen. 237, published March 31, 1933, was in response to an action by the Clintonville common council fixing the salaries of the superintendent and employees of the newly-formed water and light commission. The opinion said that pursuant to sec. 66.06 (10)(a) and (c), Stats. 1931 [now 66.068(1) and (3)], ". . . the right of fixing these salaries rests with the water and light commission, not with the city council." and that these statutes,

". . . specifically authorize the water and light commission to fix the compensation of the manager, as well as the compensation of such subordinates as shall be necessary. It is our opinion that sec. 66.06(1)(a) and (c) are special statutes relating to the manager and employees of the water and light commission and supersedes any other statute which might allow the common council to fix the salaries of these persons." *Id.* at 238.

The attorney general also addressed the subject in subsequent opinions. In 23 Op. Atty. Gen. (1934) 387, it was concluded that the specific provisions of sec. 66.06(10), Stats. 1931 [now 66.068], superseded the general provisions of ch. 62 where a municipally-owned public utility was concerned. The opinion stated that a city of the fourth class could only use a commission or board of public works to operate its utility and that a common council could not substitute itself for the board. The opinion said it was the legislature's intent that the "operation of a municipal utility be carried on divorced from the direct supervision of the council." *Id.* at 388. The opinion cited an earlier opinion in which it had been stated that common council members could not appoint themselves to the board designated to replace a board of public works, because of the prohibitions of sec. 66.11(2), Stats. 22 Op. Atty. Gen. (1933) 480. It

also noted that the provisions of sec. 66.06(10), "specifically govern the management of municipally-owned public utilities" and therefore supersede the general statutory provisions of sec. 62.14 relating to a board of public works. 23 Op. Atty. Gen. at 388.

A utility commission's power to fix the salaries of its employees was also recognized in 28 Op. Atty. Gen. (1939) 44, where it was stated that a commission member could not also be the manager of the utility because the commission had the power to appoint the manager and set his salary. We believe the rationale of these opinions is sound.

Of some relevance also is *Richmond v. Lodi,* 227 Wis. 23, 277 N.W. 620 (1938), in which this court held that a municipal utility commission could not surrender its power to remove the utility manager at any time by appointing or making a contract with him for a definite term. The court stated that the legislature had given the commission the authority to appoint a manager and fix his compensation. Our conclusion that sec. 66.068(3), Stats., vests the authority in the commission to fix the compensation of utility employees is further supported by the fact that sec. 66.068(4) sets forth certain other authority and power that the common council can, in its discretion, delegate to the commission.

The reliance of the city on *Rice Lake, supra,* and *Reetz v. Kitch, supra,* for the proposition that the common council can retain control of the compensation of utility employees when the management of the utility is placed in a water and utility commission is misplaced. These cases are concerned with the management of a utility by a board of public works (sec. 66.068(7); 62.14, Stats.) as distinguished from management of the utility by a commission under sec. 66.068(1) and (3).

Cities are creatures of the legislature and have only such powers as are expressly granted to them and such

others as are necessary to implement the powers expressly granted. *Mequon v. Lake Estates Co.,* 52 Wis.2d 765, 773, 190 N.W.2d 912 (1971). Here, as we have stated, the common council elected to place the management of the utility with the commission. By the adoption of secs. 8.08 and 8.10 of the City Code and based upon past relationships between the council and the commission, the city now appears to argue that it has created a hybrid or de facto form of management under sec. 66.068(7), Stats., thereby appointing itself to fix the wages of utility employees. We find no authority, statutory or otherwise, to support such a position and it is directly contra to the provisions of sec. 66.068(3).

We conclude that sec. 66.068(1) and (3), Stats., are specific statutes and supersede the general statutory provisions. The commissioners are expressly granted the authority to employ and fix the compensation of such subordinates as shall be necessary to operate the utility. The judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.