Joseph B. HENGEL, Petitioner-Respondent,

v.

Barbara Sue HENGEL, Appellant.

Court of Appeals

*No. 82–2138. Argued April 6, 1984.—Decided January 24, 1985.*

738

For the appellant there were briefs by *James R. Koby* and *Phelps & Koby* of La Crosse, and oral argument by *James R. Koby.*

For the petitioner-respondent there was a brief by *Roger L. Imes* and *Hale, Skemp, Hanson & Skemp* of La Crosse and oral argument by *Roger L. Imes.*

Before Gartzke, P.J., Bablitch, J., and Dykman, J.

GARTZKE, P.J. Barbara Hengel appeals from a judgment divorcing her from Joseph Hengel. She seeks review of the property division. The trial court ordered division in accordance with the parties' prenuptial agreement. Barbara challenges the trial court's conclusions that sec. 767.255(11), Stats., validates a prenuptial agreement entered before that statute was effective and that the agreement is equitable. She argues that if the agreement is enforceable, it is inequitable.

As we read the prenuptial agreement, Barbara's share under the property division is in lieu of alimony and consists of "all household furniture and furnishings, dishes, silverware, jewelry and any and all other of Joe's personal effects and possessions" and one automobile not more than three years old. Neither party suggests that "Joe's personal effects and possessions" include cash, bonds, or corporate stock.

The judgment was entered as of July 9, 1982. The trial court found that the parties married October 11, 1973, when Joseph was 41 years old and Barbara was 25. Each had children by a previous marriage. They had lived together for about one and one-half years. The

marriage was "in the main" at Joseph's request. Barbara had worked for Joseph in his business. Her family is of considerable means and she is moderately sophisticated in financial matters. She knew many months before the marriage that Joseph would not remarry without a prenuptial agreement.

The trial court found that at the time of the marriage, Joseph had a net worth of $340,000. Barbara had a car, some furniture and her clothing. At the time of the divorce, Joseph had a net worth of $3,063,902.41. Barbara had not accumulated a substantial estate. She leaves the marriage under the agreement, the court found, with more assets and benefits than when she came into the marriage, the amount of which had not been shown "but would appear to be several thousand dollars in money's worth."

The trial court found that when Barbara received the proposed agreement September 21, 1973, she was made aware of the contents of a financial statement and had independent knowledge of the substantial size of Joseph's estate. She went over the agreement with her lawyer. He advised her not to sign it, but she insisted. Her lawyer negotiated a change in the agreement to give her one-third of Joseph's estate if the parties were married at his death. She entered the agreement knowingly, understandingly and voluntarily, and first questioned it in 1980 when marital problems arose.

Section 767.255, Stats., provides that when dividing the property of the parties to a divorce, the court shall presume that the marital estate

is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering: . . . (11) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms

of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

The trial court held that sec. 767.255(11), Stats., applies to the 1973 prenuptial agreement. The court concluded that the agreement "and the circumstances of its signing" are equitable and ordered that property of the parties be distributed in accordance with the agreement.

1. *Retroactive Application of sec. 767.255(11)*

Barbara contends that sec. 767.255(11), Stats., does not apply to her 1973 agreement with Joseph. Section 767.255(11) was created as sec. 247.255(11), Stats. 1977, by sec. 41, ch. 105, Laws of 1977. Barbara relies on two propositions: first, absent legislative intent to the contrary, statutes are presumed to operate only prospectively; second, statutes in derogation of the common law are strictly construed. She joins these propositions with Wisconsin case law on prenuptial agreements, and concludes that her agreement with Joseph was forever void.

Well before 1978 Wisconsin case law had established that a husband or wife may contract with respect to the rights of each in the estate of the other. *Oesau v. Estate of Oesau,* 157 Wis. 255, 259, 147 N.W. 62, 64 (1914); *Bibelhausen v. Bibelhausen,* 159 Wis. 365, 376, 150 N.W. 516, 520 (1915). The case law also established that an antenuptial agreement limiting the husband's liability in the event of separation or divorce was against public policy and void. *Fricke v. Fricke,* 257 Wis. 124, 129, 42 N.W.2d 500, 502 (1950). Accordingly, unless sec. 767.255 (11), Stats., applies retroactively, the prenuptial agreement between Barbara and Joseph is unenforceable.

As Barbara argues, absent language to the contrary, statutes are presumed to apply only prospectively. *Feest v. Allis-Chalmers Corp.,* 68 Wis. 2d 760, 767, 229 N.W.2d 651, 655 (1975). The extensive 1977 revisions to the

Family Code, however, are expressly made applicable "to all actions affecting marriage, . . . which are commenced on and after the effective date of this act." Sec. 62(1), ch. 105, Laws of 1977. No part of the revisions regarding actions affecting the family is excluded from the effective date provision. Consequently, no presumption arises in favor of only a prospective application of sec. 767.255(11), Stats.

Statutes are not construed to change the common law of Wisconsin unless the legislature's intent to make the change is clear, unambiguous and peremptory. *Maxey v. Redevelopment Authority of Racine,* 94 Wis. 2d 375, 399, 288 N.W.2d 794, 805 (1980). The 1977 legislative intent to change the common law meets these tests. The statute works an abrupt reversal of the common law. The statute provides that agreements of the type before us "shall" be binding upon the court unless inequitable, and equitability "shall" be presumed. Sec. 767.255(11), Stats. "Shall" is generally used in a mandatory sense, *Karow v. Milwaukee County Civil Serv. Comm.,* 82 Wis. 2d 565, 570–71, 263 N.W.2d 214, 217 (1978). It is used in that sense here.

2. *Agreement Not Void*

Barbara argues that because antenuptial contracts affecting the rights of a party to a divorce were void in 1973, sec. 767.255(11), Stats., cannot resuscitate her agreement with Joseph. We disagree.

The *Fricke* court employed judicially perceived public policy grounds to void antenuptial agreements limiting a spouse's liability on divorce. 257 Wis. at 129, 42 N.W.2d at 502. If the supreme court and the legislature differ on the appropriate public policy, the legislative view prevails. "When acting within constitutional limitations, the Legislature settles and declares the public policy of a state, and not the court." *Borgnis v. Falk Co.,* 147 Wis. 327, 351, 133 N.W. 209, 216 (1911).

Accordingly, if the legislature intends a statute to apply retroactively, as here, and the statute changes a common law rule expressly adopted on public policy grounds, as here, the policy itself is changed retroactively. The 1973 agreement is not void.

3. *Obligation Unimpaired*

Barbara asserts that if sec. 767.255(11), Stats., applies retroactively to her agreement with Joseph, the statute is unconstitutional. She relies on U.S. Const. art. I, sec. 10, cl. 1, which provides that no state shall pass any "law impairing the obligation of contracts," and Wis. Const. art. I, sec. 12, which prohibits the passage of "any law impairing the obligation of contracts." We reject her contention.

Section 767.255(11), Stats., in no way impairs the obligation of Barbara's contract. On the contrary, the effect of sec. 767.255(11) is to confirm it. As was said of a state statute validating prior conveyances under an invalid power of attorney, "The only right taken away is, the right dishonestly to repudiate an honest contract or conveyance to the injury of the other party." *Randall v. Krieger*, 90 U.S. 137, 149 (1875). Holding that the statute did not violate the contract clause, the *Randall* court estopped a wife from claiming dower in lands conveyed under an invalid power of attorney before the statute was adopted.

We conclude that the trial court properly held that sec. 767.255(11), Stats., applies to the 1973 agreement between the parties regarding a property division in a divorce. We turn to the question whether the court abused its discretion when it held that the agreement is equitable.

### 4. *Equitability of Agreement*

The statutory test of equitability in sec. 767.255(11), Stats., leaves enforceability generally to the trial court's sense of fairness. Discretion is inherent in the test. Our review of the court's conclusion that the agreement is equitable is therefore limited to whether the court abused its discretion.

Our scope of review is described with greater particularity in *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981):

A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination. It is recognized that a trial court in an exercise of its discretion may reasonably reach a conclusion which another judge or another court may not reach, but it must be a decision which a reasonable judge or court could arrive at by the consideration of the relevant law, the facts, and a process of logical reasoning.

The trial court exericsed its discretion. It announced how it reasoned to the result, using the facts it found and stating the law it relied upon. The remaining questions are whether it relied upon a proper theory of law and had a factual basis for its determination.

Neither party criticizes the trial court's choice of legal principles. The court looked to *Del Vecchio v. Del Vecchio,* 143 S.2d 17 (Fla. 1962), and Loeb, *Prenuptial and Postnuptial Agreements,* 54 Wis. Bar Bull. 13 (1981), for guidance and concluded that because the agreement and circumstances of its signing meet the tests described in that case and article, the prenuptial agreement is equitable as to Barbara. The *Del Vecchio* court held that a valid antenuptial agreement "contemplates a fair and

reasonable provision therein for the wife or, absent such provision, a full and frank disclosure to the wife, before the signing of the agreement, of the husband's worth, or, absent such disclosure, a general and approximate knowledge by her of the prospective husband's property." 143 S.2d at 20. Loeb's article relies heavily on *Del Vecchio*.

The *Del Vecchio* court held that "fairness should, of course, be measured as of the time of the execution of the agreement." 143 S.2d at 20. Section 766.58(6)(a), Stats., created by the 1983 Marital Property Act, sec. 47 1983 Act 186, but not yet effective, contains a similar standard. Under that section an agreement of the type before us is unenforceable if it was "unconscionable when made." Neither party argues that equitability should be determined as of the time the agreement is enforced.

Barbara asserts that the facts reveal that she was presented with a "take it or leave it" option. She emphasizes Joseph's admission that the parties were leaving on October 10 for Las Vegas to marry. While her mother and father were waiting to go to the airport, Joseph said he would not leave until or unless the contract was signed. Barbara argues that *Lutgert v. Lutgert,* 338 S.2d 1111 (Fla. Dist. Ct. App. 1976), and *Norris v. Norris,* 419 A.2d 982 (D.C. App. 1980), are in point. The *Lutgert* court found that a wife's will was overborne when the day before the wedding the husband produced an agreement for her to sign, substantial preparations having been made for the wedding and honeymoon, and insisted on execution before the marriage could take place. The *Norris* court sustained a trial court's "questioning" whether the wife had voluntarily signed an agreement an hour before the wedding.

The trial court found that Barbara knew many months before the marriage that Joseph would not remarry without a prenuptial agreement, and that she received a copy

of the proposed agreement September 21, 1973. These findings are undisputed. The trial court found that she signed the agreement voluntarily. Our review of this finding is confined to the clearly erroneous test. Sec. 805.17(2), Stats. The finding is not clearly erroneous, and we must accept it. The *Lutgert* and *Norris* decisions are inapplicable.

Barbara complains that no financial statements were attached to the agreement. Neither sec. 757.255(11) nor the case law imposes that requirement. The trial court found that Barbara is moderately sophisticated in financial matters, that she was made aware of the contents of financial statements and, that she had independent knowledge of the substantial size of Joseph's estate before the marriage. These findings have not been shown on appeal to be clearly erroneous, and we therefore must accept them. Sec. 805.17(2), Stats.

Barbara notes that she testified she had never seen Joseph's financial statement or his business statement. The trial court's findings regarding her familiarity with Joseph's financial affairs meet this contention. Under the *Del Vecchio* guidelines, the spouse against whom enforcement is sought need have only a general and approximate knowledge of the other spouse's property.

Barbara suggests that the trial court should have considered her vocational and employment opportunities after the divorce. We find no evidence in the record regarding those opportunities. Moreover, Barbara takes no issue with the proposition that the fairness of the agreement is measured as of the time it was entered. Her circumstances after the marriage have little bearing on that issue. The court found that she will have at least as comfortable a life after the divorce as she had before the marriage. Barbara does not dispute that finding.

Finally, Barbara asserts that she came into the marriage with nothing, contributed substantially to the mar-

riage and Joseph's business by assisting him, and she leaves the marriage with little more than she had when she entered it. She asserts that during the eight years of married life she could have obtained an education and learned a skill or developed a profession but did not. The trial court, however, found that Barbara's contribution to the increase in Joseph's estate during the marriage was as a homemaker and social companion and not directly related to assisting him in any business enterprise. Although Barbara appears to challenge that finding, she refers to no part of the record which indicates that it is clearly erroneous. The scope of our review is limited under sec. 805.17(2), Stats., to whether the factual findings of the trial court are clearly erroneous. Barbara has not met that standard. We are bound by the finding.

Many wives assist their husbands as homemakers and social companions. The legislature knew that when it provided in sec. 767.255(11), Stats., that such agreements are binding unless inequitable and are presumed to be equitable. Consequently, Barbara's contributions as a homemaker do not affect the equitability of the agreement.

We conclude on the basis of the arguments made on appeal and the record before us that the trial court did not abuse its discretion when it pronounced the 1973 agreement between Barbara and Joseph Hengel to be equitable as to her.

*By the Court.*—Judgment affirmed. No costs to either party.