Dale D. RICE and Jeffrey J. Welhouse, d/b/a Algoma Properties, Plaintiffs-Respondents,

v.

CITY OF OSHKOSH, Defendant-Appellant.

Supreme Court

*No. 87–1521. Argued October 5, 1988.—Decided February 14, 1989.*

(Also reported in 435 N.W.2d 252.)

For the defendant-appellant there were briefs (in court of appeals) by *John W. Pence,* city attorney, and *Warren P. Kraft,* assistant city attorney, and oral argument by *Mr. Pence.*

For the plaintiffs-respondents there was a brief (in court of appeals) by *Richard J. Carlson* and *Patterson, Jensen, Wylie, Silton & Seifert, S.C.,* Appleton, and oral argument by *Mr. Carlson.*

Amicus curiae briefs were filed by *James N. Schneider,* legal counsel, and *Curtis A. Witynski,* assistant legal counsel, Madison, for League of Wisconsin Municipalities; and *Robert A. Teper* and *Michael, Best & Friedrich,* Milwaukee, for Wisconsin Builders Association.

DAY, J.   This appeal was accepted on bypass of the court of appeals pursuant to sec. 808.05, Stats., (1985–86). The appeal is from a judgment of the circuit court for Winnebago county, Honorable Thomas S. Williams, judge. The circuit court ruled that the town of Algoma (Town) was granted sole authority, pursuant

to sec. 236.13(2)(a), Stats.,[1] to establish the public improvement requirements of a subdivision plat owned by the Plaintiffs, Dale D. Rice and Jeffrey J. Welhouse, d/b/a Algoma Properties (Algoma Properties). The circuit court concluded that only the Town was authorized by statute to require public improvements and, therefore, the city of Oshkosh (City) could not condition its extraterritorial approval of the plat on compliance with the City's public improvement requirements. We conclude that pursuant to sec. 236.13(2)(a) the power to condition plat approval based on installation of public improvements[2] is granted solely to the governing body within which the subdivision lies and in this case that is the Town. We therefore affirm the judgment of the circuit court.

The facts in this case are not in dispute. Algoma Properties prepared a preliminary subdivision plat entitled "Oakwood Circle," which is entirely located within the Town's limits. The plat also lies within the three-mile extraterritorial plat approval jurisdiction of the City.[3]

---

[1]Section 236.13(2)(a), Stats., provides:

**Basis for Approval. . . . (2)**(a) As a further condition of approval, the governing body of the town or municipality within which the subdivision lies may require that the subdivider make and install any public improvements reasonably necessary. . . .

[2]Chapter 236 provides no definition of what constitutes a "public improvement" under this chapter. Sections 66.059(1)(d) and 66.54(1)(d), Stats., contain definitions of "public improvement," but these statutes are not applicable to the issues here. It is undisputed by the parties in this case that the items in question here are in fact "public improvements" under this chapter.

[3]Section 236.02(5), Stats. states:

**Definitions . . . . (5)** "Extraterritorial plat approval jurisdiction" means the unincorporated area within 3 miles of the corporate

Algoma Properties presented the plat for approval[4] to the required governmental bodies, including both the City and the Town. The Town conditionally approved the plat. It required that the plat comply with the Town's public improvement requirements. The City also conditionally approved the plat. The City, however, imposed its own public improvement requirements and specifications as a condition of its extraterritorial plat approval. The rest of the governmental bodies; the Wisconsin Department of Development, the East Central Wisconsin Regional Plan Commission, and Winnebago County, unconditionally approved the plat.

It is not possible to meet the public improvement requirements of both the Town and City. For instance, the street pavement requirements of the two governments differ. Both parties state that the Town requires asphalt surfacing whereas the City requires concrete. The City also requires *underground* storm sewers designed to accommodate a "seven to ten year return rainfall," whereas the Town merely requires *surface* drains designed to accommodate a "twenty-five year return rainfall."

Algoma Properties filed an action pursuant to sec. 236.13(5), Stats.,[5] seeking a review of the City's decision

limits of a first, second or third class city, or 1-½ miles of a fourth class city or a village.

[4]Pursuant to secs. 236.10, 236.11, 236.12, Stats.
[5]Section 236.13(5), Stats., provides:

**Basis for approval. . . . (5)** Any person aggrieved by an objection to a plat or a failure to approve a plat may appeal therefrom as provided in s. 62.23(7)(e) 10, 14 and 15, within 30 days of notification of the rejection of the plat. For the purpose of such appeal the term "board of appeals" means an "approving authority." Where the failure to approve is based on an unsatisfied objection, the agency making the objection shall be made a party to

to condition its approval on the plat meeting the City's public improvement requirements. Algoma Properties alleged five causes of action including one that stated that the City had no authority to impose its public improvement requirements upon Algoma Properties because the plat lay within the Town's jurisdiction on these matters.

Subsequently, Algoma Properties asked the City to grant a variance so that the City's public improvement requirements did not have to be met as a condition of the City's approval of the plat. This was denied and the final plat was rejected by the City.

Algoma Properties, therefore, amended its complaint to include, among other things, the rejection of its variance request. The circuit court requested briefs on the first cause of action—that the City was not authorized to impose its public improvement requirements as a condition of its extraterritorial plat approval.

In a written decision, the circuit court "conclude[d] that because the power to require improvements under [sec.] 236.13(2)(a), [Stats.,][6] is vested solely in the governing body of the town within which the subdivision lies, the City cannot condition its approval on the making of such improvements." The circuit court ruled that although sec. 236.45(2), Stats.,[7] was a general grant of power to the City to enact subdivision ordinances, it held the "specific enumeration of areas in which the city may act ... seem to be a far cry from requiring public improvements." It found the specific language of

the action. The court shall direct that the plat be approved if it finds that the action of the approving authority or objecting agency is arbitrary, unreasonable or discriminatory.

[6]*See supra* note 1.
[7]*See infra* note 13.

sec. 236.13(2)(a), Stats., to be a granting of exclusive power to require public improvements to only that government within which the plat is located. Consequently, the City was ordered to approve Algoma Properties' preliminary plat without such public improvement conditions.

The City appealed. Both parties joined in a petition to bypass the court of appeals. The single issue, as phrased in the bypass petition, is:

As between Sections 236.13(2)(a) and 236.45(2)(a), Wis. Stats., does a municipality have authority to impose its own requirements and specifications for public improvements in another governmental jurisdiction as a condition of extraterritorial plat approval?

A question of statutory construction is a question of law which this court reviews without deference to the circuit court's determination. *State ex rel. Newspapers v. Showers,* 135 Wis. 2d 77, 85, 398 N.W.2d 154 (1987). In construing a statute, this court must first look to the language of the statute itself. *Milwaukee Met. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 71, 375 N.W.2d 649 (1985). If the meaning of the statute is clear on its face, this court will not look outside the statute to determine legislative intent. Only when the language of the statute is unclear or ambiguous should this court examine the scope, history, context, subject matter, and object of the statute to discern the legislative intent. *Id.*

We conclude the language in sec. 236.13(2)(a), Stats., is clear that only the government within which the plat lies may establish public improvement require-

ments. Section 236.13(2)(a), Stats.,[8] provides in part: "further condition of approval, *the governing body of the town or municipality within which the subdivision lies* may require that the subdivider make and install any public improvements reasonably necessary...." (Emphasis added.) Only the Town is granted specific authority to regulate the public improvements of the Oakwood Circle plat.

Even if the phrase "within which the subdivision lies" was held to be unclear as to whether or not it also applies to extraterritorial jurisdiction, we note the Interpretive Commentary about this section which states: "The authority under this section to require installation of public improvements does *not* apply extraterritorially."[9] Beuscher, Interpretive Commentary (1957), *Wis. Stat. Ann.*, sec. 236.13, at 262 (1987) (emphasis in original). We conclude the City is not authorized to set the requirements for public improvements in this case.

The City argues that it is granted authority to regulate public improvements extraterritorially if it passes a public improvement ordinance pursuant to sec. 236.45, Stats. The City cites *Jordan v. Menomonee Falls,* 28 Wis. 2d 608, 137 N.W.2d 442 (1965), as authority for the proposition that sec. 236.45(2)[10] is a broad grant of power to the municipalities which can be used to establish extraterritorial public improvement requirements. Section 236.45(2)(b) states that ordi-

---

[8]*See supra* note 1.

[9]The comment also states: "It may be, however, that such extraterritorial requirements can be imposed through the adoption of a subdivision ordinance under 236.45, Stats. See particularly 236.45(3)." This comment is addressed later in this opinion.

[10]*See infra* note 13.

nances adopted pursuant to sec. 236.45 are to be liberally construed in favor of the adopting municipality.[11] In addition, any ordinance adopted pursuant to sec. 236.45 is applicable to lands within a municipality's extraterritorial plat approval jurisdiction. Section 236.45(3);[12] *see also* 66 Op. Att'y. Gen. 103, 105–06 (1977). The City maintains this broad grant of power permits the City to regulate public improvements extraterritorially and that the circuit court interpreted the City's authority under sec. 236.45 too narrowly and in contradiction to *Jordan*.

■ We agree with the City that the circuit court defined the City's power incorrectly by limiting the City's authority to those purposes specifically enumerated in sec. 236.45(2)(a), Stats. We conclude that even though the City has been granted a broad range of power under sec. 236.45 and *Jordan,* that power is restricted when the legislature has granted specific authority to establish public improvement require-

---

[11]Section 236.45(2)(b), Stats., provides:

**Local subdivision regulation. . . . (2)** Delegation of power. . . . **(b)** This section and any ordinance adopted pursuant thereto shall be liberally construed in favor of the municipality, town or county and shall not be deemed a limitation or repeal of any requirement or power granted or appearing in this chapter or elsewhere, relating to the subdivision of lands.

[12]Section 236.45(3), Stats., provides:

**Local subdivision regulation. . . . (3)** Areas in Which Subdivision Ordinances Apply. An ordinance adopted hereunder by a municipality may regulate the division or subdivision of land within the extraterritorial plat approval jurisdiction of the municipality as well as land within the corporate limits of the municipality if it has the right to approve or object to plats within that area under s. 236.10(1)(b)2 and (2).

ments for plat approval to the governmental unit within which the plat lies.

In *Jordan,* this court stated that an ordinance passed by a local governmental unit pursuant to sec. 236.45(2)(a), Stats., was not restricted by only those purposes stated in sec. 236.45(2)(a), but encompassed the larger domain of the declaration of legislative intent as contained in sec. 236.45(1).[13] *Jordan,* 28 Wis. 2d at 617.

We hold, however, that the authority granted under sec. 236.45(2)(a), Stats., is limited by sec. 236.13(2)(a). Section 236.45(2)(b) provides:

---

[13]Sections 236.45(1) and (2)(a), Stats., provide in part:

**236.45. Local subdivision regulation. (1)** The purpose of this section is to promote the public health, safety and general welfare of the community and the regulations authorized to be made are designed to lessen congestion in the streets and highways; to further the orderly layout and use of land; to secure safety from fire, panic and other dangers; to provide adequate light and air, including access to sunlight for solar collectors and to wind for wind energy systems; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate adequate provision for transportation, water, sewerage, schools, parks, playgrounds and other public requirements; to facilitate the further resubdivision of larger tracts into smaller parcels of land. The regulations provided for by this section shall be made with reasonable consideration, among other things, of the character of the municipality, town or county with a view of conserving the value of the buildings placed upon land, providing the best possible environment for human habitation, and for encouraging the most appropriate use of land throughout the municipality, town or county.

**(2)** Delegation of power. (a) To accomplish the purposes listed in sub. (1), any municipality, town or county which has established a planning agency may adopt ordinances governing the subdivision or other division of land which are more restrictive than the provisions of this chapter. . . . Such ordinances may make applicable to such divisions any of the provisions of this chapter, or may provide other surveying, monumenting, mapping and approving requirements for such division.

This section and any ordinance adopted pursuant thereto shall be liberally construed in favor of the municipality, town or county and *shall not be deemed a limitation or repeal of any* requirement or *power granted* or appearing *in this chapter* or elsewhere, *relating to the subdivision of lands.* (Emphasis added.)

The power granted to the City is limited by the provisions of chapter 236 of the statutes. This includes the express authority granted to the Town in this case to establish the public improvement requirements pursuant to sec. 236.13(2)(a). This court has held that ordinances adopted pursuant to sec. 236.45(2) cannot be "contrary, expressly or by implication, to the standards set up by the legislature." *Mequon v. Lake Estates Co.,* 52 Wis. 2d 765, 774, 190 N.W.2d 912 (1971).

In addition, specific statutes supersede general statutory provisions. *Schroeder v. City of Clintonville,* 90 Wis. 2d 457, 462, 280 N.W.2d 166 (1979). In the case now before this court, sec. 236.13(2)(a), Stats., specifically grants the Town the power to regulate public improvements whereas sec. 236.45(2)(a) is only a general statute enabling the City to enact ordinances on a variety of matters.

The City also cites Professor Beuscher's Interpretive Commentary to sec. 236.13(2)(a), Stats., as support for its argument that it is authorized to specify public improvement requirements. As noted earlier, Professor Beuscher stated unequivocally that the authority "to require installation of public improvements does *not* apply extraterritorially." (Emphasis in original.) However, Professor Beuscher also stated:

> It may be, however, that such extraterritorial requirements can be imposed through the adoption of a subdivision ordinance under 236.45. See particularly 236.45(3).

It is in this latter part of Professor Beuscher's comment on which the City relies. It was only a suggested possible interpretation. It has never been adopted by this court and we do not find it persuasive.

*Jordan,* relied upon by the City, is distinguishable. *Jordan* did not involve a question of extending the municipality's authority to its extraterritorial jurisdiction. It is clear that within the City's limits, the City can regulate the public improvements of a plat. That was the fact situation in *Jordan.* The question here is whether the City can extend such regulation beyond its city limits and into its extraterritorial jurisdiction.

In addition, this court in *Jordan* first considered the powers granted under sec. 236.13(2)(a), Stats., before considering whether the municipality had authority to regulate under sec. 236.45(2)(a). This court must first look to sec. 236.13(2)(a) for a specific grant of authority before allowing a general grant under 236.45(2)(a). *See Jordan,* 28 Wis. 2d at 616. Section 236.13(2)(a), therefore, supersedes sec. 236.45(2)(a).

*Jordan* is also distinguishable because in *Jordan* there was no conflicting statute granting specific authority to another governmental unit. Nothing in *Jordan* implies that this broad grant of power would override a specific grant of authority to another governmental unit. *See* sec. 236.45(3), Stats.

The League of Wisconsin Municipalities (League), as Amicus Curiae, makes two additional arguments why the City should be allowed to regulate the public improvements of Oakwood Circle. First, it argues that

sec. 236.13(2)(a), Stats., is a grant of power that enables the town or city within which the plat lies to establish public improvement requirements without enacting an ordinance. Its argument then continues that this section is not an exclusive grant of power, and therefore, the plat is subject to the City's ordinances pursuant to sec. 236.13(1)(b).[14]

We find this argument unpersuasive. In *State ex rel. Columbia Corp. v. Pacific Town Board,* 92 Wis. 2d 767, 286 N.W.2d 130 (Ct. App. 1979), the court discussed the history of chapter 236 and the need for governmental bodies to establish standards and guidelines for plat approvals. *See also* 4 *Report of The Wisconsin Legislative Council* 18–20 (January 1955). The court stated:

> In light of the above authorities, we hold that local units of government have no discretion to reject proposed plats under sec. 236.13, Stats., unless the plat conflicts with an existing statutory requirement of ch. 236 or with an existing written ordinance, master plan, official map, or rule as provided by sec. 236.13(1)(a) through (e), Stats.

*Columbia Corp.,* 92 Wis. 2d at 779.
We conclude the problems associated with the need to codify requirements as pursuant to sec.

---

[14]Section 236.13(1)(b), Stats., provides:

**236.13. Basis for approval.**

(1) Approval of the preliminary or final plat shall be conditioned upon compliance with:

(a) The provisions of this chapter;

(b) Any municipal, town or county ordinance; ... .

236.13(1), Stats., are also present in cases arising under sec. 236.13(2)(a).

The League also argues it is good public policy to allow cities to regulate the public improvements of extraterritorial plats. Public policy as to what governmental unit or units should be authorized to establish public improvement requirements for plat approval is a matter for the legislature. "When acting within constitutional limitations, the Legislature settles and declares the public policy of a state, and not the court." *Hengel v. Hengel*, 122 Wis. 2d 737, 742, 365 N.W.2d 16 (Ct. App. 1985) citing *Borgnis v. Falk Co.*, 147 Wis. 327, 351, 133 N.W. 209 (1911).

The policy choice which we conclude was made by the legislature is not void of reason or logic. Public improvements are subject to the political and financial base of the area directly involved. In the case before us, the City is not financially responsible for the public improvements they require. The City's ordinance specifically rejects the payment of funds for extraterritorial public improvements.[15] The legislature left this decision of public improvements to the governmental unit most accountable for such decisions where such an ordinance exists. This policy conforms to the legislative

---

[15]In the Oshkosh Municipal Code, sections 30–42(c)(3); 30–42(c)(4); 30–42(c)(5); and 30–42(c)(6), all regulate public improvements, including the subject matters in dispute in this case— Storm Sewers and Street Surfacing. While the City wishes to apply these requirements to extraterritorial plats, it contains this clause in all of the above mentioned sections:

> "The City of Oshkosh will *not* participate in any costs associated with the installation of [subject matter regulated by that specific subsection] improvements in plats located within the city's extraterritorial plat approval area." (Emphasis in original.)

granting of specific power over such responsibilities to the "town or municipality within which the subdivision lies." Public policy in this area of plat approval authority is for the Wisconsin Legislature. Because we conclude the legislature gave specific authority to the town or municipality within which the plat is located to designate public improvement requirements,[16] we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). The majority acknowledges that sec. 236.45 grants a municipality, town or county a broad range of powers. The majority concludes, however, that a municipality's power is restricted "when the legislature has granted specific authority to establish public improvement requirements for plat approval to the governmental unit within which the plat lies." Majority at 86–87.

The town of Algoma has the power to establish standards for public improvement for the plaintiffs' subdivision because the subdivision lies within the town. Sec. 236.13(2)(a), Stats.

I conclude that sec. 236.45, Stats., enables the city of Oshkosh also to establish standards for public improvements for plaintiffs' subdivision because the subdivision lies in the city's extraterritorial plat ap-

---

[16]The Dissent argues that sec. 236.13(4), Stats., should be applied in this case. Section 236.13(4) provides:

> (4) Where more than one governing body or other agency has authority to approve or to object to a plat and the requirements of such bodies or agencies are conflicting, the plat shall comply with the most restrictive requirements.

Because we hold that only the Town has authority to approve public improvements, there are no conflicting requirements between two governing bodies and, therefore, sec. 236.13(4) is not applicable.

proval jurisdiction. I think this interpretation of the statutes is supported by the greater weight of the applicable precedent, more logically harmonizes the incongruent sections of chapter 236, and is consistent with the legislative purposes stated in the law itself and in accompanying interpretive commentary.

Because the legislature has given both the town and the city the authority to establish standards, we should turn to sec. 236.13(4), Stats., to determine which standards are applicable. That section provides that "where more than one governing body or other agency has authority to approve or to object to a plat and the requirements of such bodies or agencies are conflicting, the plat shall comply with the most restrictive requirements."

For these reasons, I dissent.

I am authorized to state that Justice William A. Bablitch joins in this dissent.