ROGERS DEVELOPMENT, INC. and Town of Beloit,
Plaintiffs-Respondents,

v.

ROCK COUNTY PLANNING AND DEVELOPMENT COMMITTEE
and County of Rock, Defendants-Appellants.

Court of Appeals

*No. 02–0017. Submitted on briefs August 9, 2002.—Decided
May 1, 2003.*

2003 WI App 113

(Also reported in 666 N.W.2d 504.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Eugene R. Dumas*, deputy corporation counsel, Rock County, Janesville.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *David C. Moore* of *Nowlan & Mouat LLP*, of Janesville.

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. ROGGENSACK, J. The County of Rock and the Rock County Planning and Development Committee[1] appeal summary judgment granted to Rogers Development, Inc. and the Town of Beloit. The circuit court ruled that County land division ordinances relating to the size of cul-de-sacs, the length of blocks and the location of roads constituted public improvement regulations. Accordingly, the court held that under WIS. STAT. § 236.13(2)(a) (2001–02),[2] the County lacked the authority to condition plat approval on compliance with the specifications for public improvements because the conditions directly conflicted with those imposed by the Town. We agree that the term "public improvements" includes regulations relating to the size of cul-de-sacs, the length of street blocks and the location of town roads. However, because § 236.13(2)(a) grants only to a "town or municipality" within which the plat lies the authority to require public improvements as a condition of plat approval, and a county is not a municipality for purposes of ch. 236, we conclude that the County may not regulate the size of cul-de-sacs, the length of street blocks and the location of town roads when the plat is located within a town, as it is here. Therefore, we affirm the circuit court's judgment, albeit on slightly different reasoning.

---

[1] Although both Rock County and the Rock County Planning and Development Committee are parties to this action, we shall refer to them in this opinion, collectively, as the County, unless the context requires otherwise.

[2] All further references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

## BACKGROUND

¶ 2. The parties stipulated to the following facts. Rogers Development, Inc. (Rogers) is a developer of residential real estate. The Town of Beloit, pursuant to Wis. Stat. §§ 236.45(2) and 236.13(2), and Rock County, pursuant to § 236.45(2), have adopted specific requirements for the subdivision of land and for improvements to be made within subdivisions.

¶ 3. In 1994, Rogers filed a preliminary plat for the Glen Hills subdivision with the Town and with the County. In 1994 and 1997, the Town and the County approved the first two phases of Glen Hills. Rogers later submitted the final plat for the third phase of Glen Hills, and the Town approved it, including the proposed public improvements. The County, however, issued a conditional approval subject to the following requirements:

 a. That the road to be built in said subdivision by the Plaintiff must be built in accordance with the Rock County Road Cross-Section Specifications and approved by the county engineer, and that the base course, ditch work, erosion control, and signs for the subdivision must be completed before final approval;

 b. That the cul-de-sac in the proposed subdivision be 70 feet in radius; and

 c. That provisions be made in said subdivision for a road or a future road to be constructed to connect with another subdivision to the north of the proposed subdivision.

The conditions imposed by the County were contrary to the directives of the Town, which had unconditionally

approved the plat for the third phase. Rogers then filed suit against the County. It pled for a certiorari review to obtain relief from the conditions the County imposed and for declaratory judgment that the County lacked the authority to regulate the making and installation of public improvements. The Town joined the action as a co-plaintiff.

¶ 4. Subsequent to filing the complaint, Rogers was granted a variance by the County, relieving it from the requirements earlier imposed and disposing of the claim for certiorari review. The County also stipulated that it lacked the authority to require a plat to conform to the requirements provided in subsection (a), set out in ¶ 3 above. However, the parties failed to reach agreement regarding the other conditions the County imposed, and submitted for summary judgment: (1) whether the County has authority to regulate the size of cul-de-sacs in the Town; (2) whether the County has authority to impose requirements for roads within the Town to be connected with other roads in order to meet the County's regulations concerning block length; and (3) whether the County has authority to direct where the town roads will be located. The circuit court granted judgment in favor of Rogers and the Town, declaring that the County's conditions were a part of public improvements and, pursuant to Wis. Stat. § 236.13(2)(a), the County lacked the authority to impose public improvement requirements that directly conflicted with requirements imposed by the Town. The County appeals.

## DISCUSSION

**Standard of Review.**

■

¶ 5. The parties seek review of the circuit court's declaratory judgment regarding the scope of the Town's and the County's authority to condition plat approval pursuant to Wis. Stat. §§ 236.13(2)(a) and 236.45. Our review involves the construction of a statute and its application to undisputed facts, which is a question of law that we review *de novo. Sievert v. American Family Mut. Ins. Co.*, 190 Wis. 2d 623, 628, 528 N.W.2d 413, 415 (1995). Whether a statute is ambiguous is also question of law. *Awve v. Physicians Ins. Co.*, 181 Wis. 2d 815, 822, 512 N.W.2d 216, 218 (Ct. App. 1994).

### Wisconsin Stat. § 236.13(2)(a).

¶ 6. Wisconsin ch. 236 authorizes any municipality, town or county that has established a planning agency to adopt ordinances governing the subdivision of land that may be more restrictive than the provisions found in ch. 236. Wis. Stat. § 236.45(2). The purpose of ch. 236 is to promote:

> [P]ublic health, safety and general welfare; to further the orderly layout and use of land; to prevent the overcrowding of land; to lessen congestion in the streets and highways; to provide for adequate light and air; to facilitate adequate provision for water, sewerage and other public requirements; to provide for proper ingress and egress; and to promote proper monumenting of land subdivided and conveyancing by accurate legal description.

Wis. Stat. § 236.01. Because the sections of ch. 236 sometimes grant power to more than one governing

body to regulate land during the subdividing process, where "the requirements of such bodies or agencies are conflicting, the plat shall comply with the most restrictive requirements." Wis. Stat. § 236.13(4). However, not all sections of ch. 236 grant authority equally to all types of governing bodies. For example, with regard to the installation of public improvements, § 236.13(2)(a) grants specific authority to "the town or municipality within which the subdivision lies" to choose to "require that the subdivider make and install any public improvements" as a further condition of plat approval.[3] That provision has been interpreted as prohibiting a municipality from directing how public improvements are to be done if the area subdivided is outside the municipality's geographic boundaries, *see Rice v. City of Oshkosh*, 148 Wis. 2d 78, 435 N.W.2d 252 (1989), unless the municipality is in the process of annexing the territory that is being subdivided. *See KW Holdings, LLC v. Town of Windsor*, 2003 WI App 9, ¶¶ 20–23, 259 Wis. 2d 357, 656 N.W.2d 752.

¶ 7. The purpose of all statutory construction is to discern the intent of the legislature. *Town of Barton v. Division of Hearings & Appeals*, 2002 WI App 169, ¶ 12, 256 Wis. 2d 628, 649 N.W.2d 293, *review denied*, 2002 WI 121, 257 Wis. 2d 117, 653 N.W.2d 889 (Wis. Sep. 26, 2002) (No. 01–1209); *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997).

---

[3] The full text of Wis. Stat. § 236.13(2)(a) provides:

> As a further condition of approval, the governing body of the town or municipality within which the subdivision lies may require that the subdivider make and install any public improvements reasonably necessary or that the subdivider execute a surety bond or provide other security to ensure that he or she will make those improvements within a reasonable time.

Therefore, our analysis begins with the language of the statute itself. *Truttschel*, 208 Wis. 2d at 365, 560 N.W.2d at 317. If the statute clearly and unambiguously sets forth the legislative intent, our inquiry ends, and we apply the plain meaning of the statute. *Cemetery Servs., Inc. v. Department of Regulation & Licensing*, 221 Wis. 2d 817, 825, 586 N.W.2d 191, 195 (Ct. App. 1998). A statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506, 510 (1997).

■

¶ 8. The resolution of the County's authority to regulate the size of cul-de-sacs, the length of blocks and location of town roads turns on our construction of the term "public improvements" in WIS. STAT. § 236.13(2)(a) because if the regulations at issue are a part of a public improvement, then under the terms of the statute, only a "town" or a "municipality" may impose them when the parcel of land at issue lies within the town or municipality. *Rice*, 148 Wis. 2d at 81, 435 N.W.2d at 253. WISCONSIN STAT. § 236.02(6) defines "municipality" as "an incorporated city or village." Since a county is not a "municipality" under this definition, it has no authority to regulate under § 236.13(2)(a). Accordingly, if the County can validly regulate, as it attempts to do here, the regulations it seeks to impose must not regard public improvements, as that term is used in § 236.13(2)(a).

¶ 9. The County contends that the circuit court erred by broadly construing public improvements to include regulations governing the size of cul-de-sacs, the length of street blocks and the location of town roads. The County contends that the court's broad construction frustrates the legislatively declared pur-

pose of ch. 236, that the County states is the "shared" or "cooperative" governance of subdivisions, because it limits the participation of all government units in establishing minimum quality standards for subdivisions.

¶ 10. The County argues that the term "public improvements" is rendered ambiguous by its interaction with other ch. 236 provisions. The County points first to WIS. STAT. § 236.45, which authorizes any municipality, town or county to adopt ordinances governing the subdivision of land to promote the purposes listed in § 236.45(1).[4] The County then argues that "public improvements" must mean only those improvements that are not subject to regulation by any authorized agency under § 236.45. For example, under the County's construction, regulating the type of material used to surface town roads is a public improvement, but regulating the location of subdivision roads is not because it falls within the purview of § 236.45 as a regulation designed to "further the orderly layout" of land. The County maintains that its proffered construction is necessary to avoid conflict between ch. 236

---

[4] WISCONSIN STAT. § 236.45 provides in relevant part:

The purpose of this section is to promote the public health, safety and general welfare of the community . . . to lessen congestion in the streets and highways; to further the orderly layout and use of land; to secure safety from fire, panic and other dangers; to provide adequate light and air, including access to sunlight for solar collectors and to wind for wind energy systems; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate adequate provision for transportation, water, sewerage, schools, parks, playgrounds and other public requirements; to facilitate the further resubdivision of larger tracts into smaller parcels of land.

provisions and that a literal interpretation of "public improvements" would defeat the purpose of ch. 236.

¶ 11. In contrast, the Town asserts that the common meaning of "public improvements" is unambiguous and includes the size of cul-de-sacs, the length of blocks and location of town roads because each County regulation affects "classic forms of public improvements." Additionally, the Town argues that a narrow construction of "public improvements" would be contrary to its common meaning and undermine the purpose of Wis. Stat. § 236.13(2)(a), which the Town contends grants sole authority to a town or municipality to require public improvements because it is the town or municipality that will have the responsibility to maintain them. We agree with the Town.

¶ 12. Chapter 236 does not define "public improvements," and no Wisconsin case has addressed the precise scope of the statutory term in the context of ch. 236. We look first to the statute's plain language. *Setagord*, 211 Wis. 2d at 406, 565 N.W.2d at 510. In the absence of a statutory definition, the general rule is to construe the plain language of the statute according to common and approved usage of the words chosen by the legislature. Wis. Stat. § 990.01(1); *see also State v. Gilbert*, 115 Wis. 2d 371, 377–78, 340 N.W.2d 511, 515 (1983). Common meaning of words may be established by using a dictionary. *Id.* at 378, 340 N.W.2d at 515.

¶ 13. We look first to the term "public" and conclude that its most common and appropriate usage is "[o]pen or available for all to use, share, or enjoy." Black's Law Dictionary 1242 (7th ed. 1999); *see also* Webster's Third New International Dictionary 1836 (1993) (defining "public" as "accessible to or shared by all members of the community"). Additionally, the term

"improvement" is defined as "[a]n addition to real property . . . that increases its value or utility or that enhances its appearance." BLACK'S LAW DICTIONARY 761 (7th ed. 1999); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1138 (1993) (defining "improvement" as "a permanent addition to or betterment of real property"). We conclude that the appropriate construction of the phrase "public improvements" as used in ch. 236 is one that improves the value or utility of the subdivision and is made available for use by the public. This construction is consistent with prior case law that has read public improvements to include the installation of sewerage facilities and water mains, furnishing potable water for home consumption, requiring asphalt for street surfacing and installation of surface drains with specific design requirements. *See Country Meadows W. P'ship v. Village of Germantown*, 2000 WI App 127, ¶ 4, 237 Wis. 2d 290, 614 N.W.2d 498; *Pederson v. Town Bd. of Town of Windsor*, 191 Wis. 2d 663, 675, 530 N.W.2d 427, 432–33 (Ct. App. 1995); *Rice*, 148 Wis. 2d at 82, 435 N.W.2d at 254.

¶ 14. Armed with this common meaning of "public improvements," we turn next to the County's argument that the interaction of WIS. STAT. §§ 236.13(2)(a) and 236.45 creates an ambiguity that requires us to restrict the interpretation of "public improvements" to instances not encompassed by § 236.45. It is true that statutes relating to the same subject should be read together and harmonized and that the purpose of those statutes as a whole will be favored over a construction that would defeat the object the legislature sought to accomplish. *See City of Milwaukee v. Milwaukee County*, 27 Wis. 2d 53, 56, 133 N.W.2d 393, 395 (1965).

224

However, we conclude that the common meaning of "public improvements" does not create discord among ch. 236 provisions.

¶ 15. We agree that WIS. STAT. § 236.45 grants liberal power to any county, town or municipality to adopt ordinances regulating the subdivision of land to promote public health, safety and general welfare. *Jordan v. Village of Menomonee Falls*, 28 Wis. 2d 608, 616–17, 137 N.W.2d 442, 446–47 (1965). However, the supreme court has previously held that this power is not absolute. In *Rice*, the Town of Algoma and the City of Oshkosh approved the same plat, conditioned on compliance with conflicting public improvement requirements. *Rice*, 148 Wis. 2d at 82, 435 N.W.2d at 254. The court held that although the City had been granted a broad range of power under § 236.45, "that power is restricted when the legislature has granted specific authority to establish public improvement requirements for plat approval to the governmental unit within which the plat lies." *Id.* at 86–87, 435 N.W.2d at 255. Therefore, *Rice* instructs that the County's authority under § 236.45 is limited by the authority granted to a town or municipality under § 236.13(2)(a). Additionally, the legislature expressly provided in § 236.45(2)(b) that § 236.45 "shall not be deemed a limitation or repeal of any requirement or power granted or appearing in this chapter." Accordingly, we reject the County's argument that the statute is ambiguous because the common meaning of "public improvements" conflicts with § 236.45(2).

■

¶ 16. Furthermore, the common meaning of "public improvements" is consistent with the underlying purpose of WIS. STAT. § 236.13(2)(a). In *Rice*, the court appraised the "policy choice" made by the legislature in

adopting § 236.13(2)(a) as giving authority over public improvements to the town or municipality that will be required to maintain them. *Rice,* 148 Wis. 2d at 91, 435 N.W.2d at 257. The court stated:

> Public improvements are subject to the political and financial base of the area directly involved. In the case before us, the City is not financially responsible for the public improvements they require. The City's ordinance specifically rejects the payment of funds for extraterritorial public improvements. The legislature left this decision of public improvements to the governmental unit most accountable for such decisions where such an ordinance exists. This policy conforms to the legislative granting of specific power over such responsibilities to the 'town or municipality within which the subdivision lies.'

*Id.* at 91–92, 435 N.W.2d at 257. Therefore, in interpreting the statute, the supreme court recognized that the responsibility to maintain a public improvement should go hand-in-glove with the authority to direct its construction as part of the platting process. Accordingly, it would be contrary to the intent of the legislature, as explained by the supreme court, to narrowly construe public improvements under § 236.13(2)(a). To do so would shift the authority to require public improvements to a governmental entity, in this case the County, that is not responsible for maintenance of the improvements that it requires. We will not construe a statute in opposition to the legislative policy underlying the statute. *See Truttschel,* 208 Wis. 2d at 365, 560 N.W.2d at 317.

¶ 17. Having concluded that the term "public improvements" is unambiguous when defined according to its common meaning, we now apply it to the undisputed facts here. We conclude that the size of cul-de-sacs, the

length of street blocks and the location of town roads are public improvements. First, there is no question that a road is a public improvement; it is axiomatic that roads improve the utility of the subdivision and are available for the public to use and enjoy. Additionally, the town or municipality within which the subdivision is located generally is responsible for the maintenance of all subdivision roads. *See e.g.,* WIS. STAT. § 81.01. Second, a cul-de-sac is simply a specific type of road. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 551 (1993) (defining "cul-de-sac" as a "street that is closed at one end but [usually] has a circular area for turning around at that end"). Indeed, the County fails to even posit an argument that a cul-de-sac, including its dimensions, is something other than a public improvement.

¶ 18. The County instead focuses on its requirements regarding the length of street blocks and location of town roads and recasts them as "design or layout" requirements. In essence, the County parses the authority to designate a public improvement, in this case a road, from the authority to determine the "size, shape and location" of the improvement. We are not persuaded by this argument. The making and installation of subdivision roads, including cul-de-sacs, are the type of public improvements contemplated by WIS. STAT. § 236.13(2)(a). In our view, the right to designate a public improvement necessarily envelops the right to determine the size, shape and location of the improvement. Otherwise, the County could circumvent § 236.13(2)(a) by conditioning plat approval on "design and layout" requirements that, in effect, require the installation of additional improvements that the Town will then be required to maintain. For example, by restricting block length to 1,500 feet, the County effectively requires the installation of an intervening road,

an improvement that the Town does not want but would have to maintain. Because the language in § 236.13(2)(a) grants only the town or municipality in which the plat lies the authority to require public improvements, the County may not regulate the size of cul-de-sacs, the length of street blocks and the location of town roads within the boundaries of a town or municipality.[5]

## CONCLUSION

¶ 19. We conclude that land division regulations relating to the size of cul-de-sacs, the length of street blocks and the location of town roads constitute public improvement requirements. Because Wis. Stat. § 236.13(2)(a) grants only to a "town or municipality" within which the plat lies the authority to require public improvements as a condition of plat approval, and a county is not a municipality for purposes of ch. 236, we conclude that the County may not regulate the size of cul-de-sacs, the length of street blocks and the location of town roads when the plat is located within a town, as it is here. Therefore, we affirm the circuit court's judgment.

*By the Court.*—Judgment affirmed.

---

[5] We note that the circuit court restricted the County only if its regulations of public improvements conflicted with those of the Town. Our ruling does not require conflict between a county and a town regulation of a public improvement.