BROOKHILL DEVELOPMENT, LTD., a Wisconsin corporation, Plaintiff-Appellant,

v.

CITY OF WAUKESHA, a Wisconsin municipal corporation, Defendant-Respondent.†

Court of Appeals

No. 80–398. Submitted on briefs September 25, 1980.—
Decided November 10, 1980.
(Also reported in 299 N.W.2d 610.)

† Petition to review granted.

For the plaintiff-appellant there was a brief by *Paul J. Burbach* of Wauwatosa. *William T. Schmid* of counsel.

For the defendant-respondent there was a brief by *George E. Lawler,* city attorney, of Waukesha.

Before Voss, P.J., Brown and Scott, J.J.

SCOTT, J. Brookhill, a subdivision developer, appeals the judgment summarily granted to the City of Waukesha which upheld the City's authority to require Brookhill to pay a fee in lieu of dedication of land for school purposes for the entire subdivision, as a condition of plat approval, even though 100 of the 104 subdivision lots were located outside the City's extraterritorial plat approval jurisdiction. We hold that the City had no statutory authority to require either dedication of land or a fee in lieu thereof for any portion of the subdivision located outside the City's extraterritorial plat approval jurisdiction. We further hold that the plat approval

ordinance which required school land dedication was not rendered invalid by the failure of the Fiscal Board to ratify the ordinance and that the application of the ordinance to Brookhill's four lots located within the City's extraterritorial jurisdiction did not deprive Brookhill of equal protection of the laws as guaranteed by the fourteenth amendment.

In requiring Brookhill to pay a fee, the City relied on an ordinance numbered 39–76 passed by the Common Council in 1976. The ordinance amended the City's Subdivision and Platting Code to provide, in part:

23.10 (1)

. . . .

(b) *Dedication of Sites.* Within the jurisdiction as set forth in §23.01 (2) and within the Waukesha Joint School District No. 1 located within such jurisdiction, the subdivider shall provide and dedicate to the Board of Education, through the City, adequate land to provide for schools and school site needs of the subdivision, as set forth in par. (c).

. . . .

(c) *Substitution of Payment in Lieu of Dedication.* 1. Where such dedication is not feasible or consistent with the City Comprehensive Plan, the subdivider shall, in lieu thereof, pay to the Board of Education a fee equivalent to the value of the required dedication.

. . . .

2. Such fees collected shall be placed in a non-lapsing fund to be used for school construction or school site acquisition, within the subdivision or within a reasonable proximity of the subdivision.

Section 23.01 (2) of the Code Provided:

(2) JURISDICTION. These regulations shall govern subdivisions within the City, and may be applied within the unincorporated area within 3 miles of the City over which the City has extraterritorial plat approval jurisdiction.

Brookhill submitted to the Common Council for its approval the final plat of a 104 lot subdivision. Ap-

proximately four lots were within the City's extraterritorial plat approval jurisdiction. The remaining 100 lots were outside the City of Waukesha's, but within the City of Brookfield's, extraterritorial plat approval jurisdiction.[1] The whole subdivision was within the Waukesha Joint School District.

The Common Council approved the plat subject to the condition that Brookhill pay $14,560 in lieu of school land dedication. The fee was calculated upon the basis of all 104 lots.[2]

Brookhill paid the full amount and then brought this action for declaratory judgment. In its first claim, Brookhill sought a judgment that the required payment of $14,560 for the 104 lots or, in the alternative, the required payment of $13,999.44 for the 100 lots outside the City's jurisdiction, was not authorized by law and sought to recover the respective amounts, plus interest and costs. In its second claim, Brookhill sought a judg-

---

[1] A city's extraterritorial plat approval jurisdiction normally extends three miles from the city's corporate limits. Sec. 236.02 (2), Stats. Sometimes, as in the present case, the three-mile extraterritorial lines of two municipalities cross each other. To avoid the situation in which two or more municipalities possess plat approval jurisdiction over the same area, the legislature provided that jurisdiction over the area shall be divided on a line all points of which are equidistant from the boundaries of each municipality concerned so that not more than one municipality shall exercise plat approval power over any area. Secs. 66.32 and 236.10(2), Stats.

[2] In its ordinance, the City assumes that 3.5 people would live on each single-family lot, for a total of 364 people living in the instant subdivision. The City's ordinance demands dedication of one acre for each 100 people (3.64 acres of land in the instant case) or payment of a fee equal to the value of that land. The City assigned a value of $4,000 per acre to the instant subdivision. $4,000 multiplied by 3.64 equals $14,560. In its summary judgment motion, Brookhill does not attack the City's procedure for determining either the amount of land to be dedicated or the fee in lieu thereof.

ment that the $14,560 demanded by the City bore no reasonable relationship to the City's need to provide schools for Brookhill's subdivision.

Brookhill subsequently moved for summary judgment, limited to its first claim that the required payment of $14,560 or, at least, $13,999.44 thereof, was unauthorized by law. The City agreed that no issue of material fact existed but argued it was entitled to judgment as a matter of law. The trial court agreed with the City. The court declared that Ordinance 39–76 was valid and that the City was authorized to require a fee in lieu of school land dedication for the entire 104 lot subdivision. The trial court stated:

The only issue is whether or not the City, by approving of the entire plat, can make their ordinance apply with respect to land dedication to the entire hundred four lots rather than only the four. City of Brookfield has had no ordinance on this subject. Had the City of Brookfield also had an ordinance covering this specific question, then the court would believe that the statute would, under 236.13(4), indicate that the ordinance that was most restrictive would apply, and there being no restrictive ordinance, the court is of the opinion that the City is correct in their allocation, that it applies to the entire one hundred four lots, there being nothing to the contrary, rather than just four lots, because they approved the entire plat.

We agree with the trial court and the parties that no genuine issue of material fact existed requiring a trial in this case. Nevertheless, we believe the trial court erroneously concluded that sec. 236.13(4), Stats., applied to the instant situation. Section 236.13(4) provides that "where more than one governing body or other agency has authority to approve or to object to a plat and the requirements of such bodies or agencies are conflicting, the plat shall comply with the most restrictive requirements." This provision is directed to the situation in

which more than one body or agency has concurrent or overlapping plat approval authority over the entire plat. For example, under sec. 236.10(1)(b), Stats., the town board, the governing body of a municipality and the county planning agency may all have approval authority over a plat which is within the municipality's extraterritorial plat approval jurisdiction. Section 236.13(4) provides, therefore, that if, for example, the county's plat approval requirements conflict with and are more restrictive than those of the municipality, the county's requirements shall apply.

Section 236.13(4), Stats., is not directed to the situation in which a plat lies within the extraterritorial plat approval jurisdiction of more than one municipality. Section 236.10(2), Stats., expressly applies to such a situation and states that "if a subdivision lies within the extraterritorial plat approval jurisdiction of more than one municipality, the provisions of s. 66.32 shall apply." Section 66.32, Stats., provides that the plat approval power of each municipality extends only to "a line all points of which are equidistant from the boundaries of each municipality concerned *so that not more than one municipality shall exercise such power over any area.*" (Emphasis added.)[3]

Applying secs. 236.10(2) and 66.32, Stats., to the present case, the City of Waukesha has plat approval jurisdiction only over the four lots actually located within its extraterritorial jurisdiction, and the City of Brookfield has such jurisdiction over the remaining 100 lots. While it is true each city can approve or reject only the

[3] For a discussion of the difference between secs. 236.13(4) and 236.10(2), Stats., *see* M. Melli & R. Devoy, *Extraterritorial Planning and Urban Growth*, 1959 Wis. L. Rev. 55, 60–61.

whole plat submitted to it and not a portion of the plat,[4] such approval or rejection can be made only upon the basis of that portion of the plat actually located within the city's plat approval jurisdiction. For example, the City of Waukesha cannot reject Brookhill's plat on the ground that a portion of the subdivision located outside the City's extraterritorial jurisdiction did not meet the requirements of its ordinances.

If sec. 236.13 (4), Stats., were read to apply to the present situation as the trial court has read it, then sec. 236.10 (2), Stats., would be without effect. The law is settled that statutes are to be reconciled if possible and are not to be interpreted in such manner as to show contradictory legislative intent if that result can be avoided. *State ex rel. Cabott, Inc. v. Wojcik,* 47 Wis.2d 759, 766, 177 N.W.2d 828, 832 (1970).

Further, the City's own ordinances do not purport to give the City the authority to approve plats located outside the City's extraterritorial plat approval jurisdiction. The ordinances provide that the subdivider may be required to dedicate adequate land for school purposes or a fee in lieu thereof only *within* the City or the unincorporated area over which the City has extraterritorial plat approval jurisdiction and within the Waukesha Joint School District. In attempting to exact a fee from Brookhill's subdivision land located *outside* the City's extraterritorial jurisdiction, the City exceeds the bounds of its own ordinances.

---

[4] The statutes do not provide for a municipality's approval of only a portion of a plat. *See* secs. 236.11(2), 236.12(2), and 236.13, Stats. In the instant case, Brookhill did not submit a plat of only the land located within the City's extraterritorial plat approval jurisdiction but submitted a plat which included land located outside the City's jurisdiction. The City was compelled to approve either the whole plat or none of it.

No cases have come to our attention in which it was held that a municipality had the authority to place plat approval restrictions upon property located outside its plat approval jurisdiction. We have discovered one case involving facts analogous to those in the present case. In *Crescent Development Corp. v. Planning Commission of the Town of New Canaan,* 148 Conn. 145, 168 A.2d 547 (1961), the plaintiff sought to subdivide a tract of which thirteen acres were located in the Town of New Canaan and forty acres were located in the Town of Stamford. After the Stamford authorities had approved the plat, the defendant approved the plat subject to a requirement that no road "shall be constructed which will provide access to property in Stamford until access is provided from the developer's land in Stamford to an established or public road in Stamford." 168 A.2d at 548. The plaintiff argued that the defendant had improperly approved the plat in such a manner as to adversely affect the Stamford part of the subdivision, but the court stated:

The defendant had no power to approve or disapprove any subdivision in Stamford, nor did it attempt so to do. It quite properly limited itself to the proposed New Canaan subdivision. Its action affected only the use of the roadway running through the New Canaan subdivision from Ponus Street.

148 Conn. at 148–49, 168 A.2d at 548 (citations omitted).

Although we have concluded that the City cannot approve Brookhill's plat subject to the condition that Brookhill dedicate school land or pay a fee in lieu thereof for the land outside the City's extraterritorial jurisdiction, we must address the contentions made by Brookhill that the City was also unauthorized to require land dedication or an equalization fee for the four lots located within the City's extraterritorial jurisdiction. Brookhill makes two arguments on this issue.

Brookhill first argues that the City's school land dedication ordinance was invalidly passed because it was en-

acted only by the City's Common Council and not enacted or ratified by the Fiscal Board. Brookhill's argument is unconvincing.

We have discovered no authority which permits a fiscal board to enact or ratify any sort of ordinance, much less an ordinance dealing with a municipality's plat approval requirements. Section 120.50(3), Stats., provides:

(3) The fiscal board shall have the power to approve the school budget, to levy the general property tax for school purposes and to exercise all other fiscal controls over the city school district which were exercised by the common council prior to the establishment of the fiscal board.

■

Despite Brookhill's argument to the contrary, a requirement for plat approval purposes of school land dedication, or a fee in lieu thereof, is not a fiscal control over a school district. Such a plat approval requirement is not a control over a school district at all but rather a control over the orderly layout and use of land and a facilitation of adequate provision of schools. *See* sec. 236.45, Stats., which declares the legislative intent regarding the delegation to municipalities of the power to adopt ordinances governing the approval of subdivisions. We agree with the trial court that the ordinance was validly enacted.

Brookhill next argues in its brief that if the City's ordinance is declared to be validly enacted, then Brookhill "will have been effectively denied equal protection of the law since no one represented its interests in the consideration or enactment by [the City] of the ordinance." This argument is poorly developed in its brief, and Brookhill cites no cases in support of its constitutional claim.

■

The school land dedication ordinance attacked by Brookhill does not deny Brookhill equal protection of the

laws. The ordinance does not discriminate between, on the one hand, developers of land located within the City and, on the other hand, developers of land located within the City's extraterritorial jurisdiction. All must dedicate land for school purposes or pay a fee in lieu thereof. "So long as the law applies to all alike, the requirements of equal protection are met." *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 465 (1947).[5]

In summary, we conclude that Brookhill is entitled to summary judgment on only that part of its first claim which requests a judgment declaring the unlawfulness of the City's land dedication or equalization fee requirement on the 100 lots located outside the City's extraterritorial jurisdiction. In this part of its claim, Brookhill demands the return of $13,999.44, plus interest and costs. Under the City's equalization fee formula, we calculate that Brookhill is entitled to $14,000,[6] or $.56 more than its demand. Pursuant to sec. 806.01(1)(c), Stats., Brookhill shall be granted the relief to which it is entitled, even though it has not demanded such relief in its complaint.

---

[5] Although Brookhill's equal protection argument will not lie against the City's ordinance, Brookhill could perhaps have argued a denial of equal protection if Brookhill had attacked the complete statutory scheme which permits Wisconsin municipalities to exercise extraterritorial powers and which does not give municipal voting rights to residents of those extraterritorial areas. *See* Comment, *The Constitutionality of the Exercise of Extraterritorial Powers by Municipalities,* 45 U. Chi. L. Rev. 125 (1977). Of course, we make no pronouncement as to the constitutionality of this scheme, but we note that the extraterritorial powers delegated to Wisconsin municipalities are quite different than the powers delegated to Alabama municipalities in the scheme whose constitutionality was upheld by the United States Supreme Court in *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60 (1978).

[6] One hundred single-family lots multiplied by 3.5 people per lot equals 350 people for that part of the subdivision located outside the City's jurisdiction. Dedication of 3.5 acres is therefore subtracted. At $4,000 per acre, 3.5 acres is worth $14,000.

*By the Court.*—Judgment reversed and cause remanded with directions to enter summary judgment consistent with this opinion.