BROOKHILL DEVELOPMENT, LTD., a Wisconsin corporation, Plaintiff-Appellant,

v.

CITY OF WAUKESHA, a Wisconsin municipal corporation, Defendant-Respondent-Petitioner.

Supreme Court

*No. 80–398. Argued June 1, 1981.—Decided June 30, 1981.*

(Also reported in 307 N.W.2d 242.)

For the petitioner there was a brief (in court of appeals) by *George E. Lawler,* city attorney, and oral argument by *Gerald Janis,* assistant city attorney.

For the appellant there was a brief (in this court) by *Paul J. Burbach* and *William T. Schmid* of Wauwatosa, and oral argument by *Mr. Burbach.*

WILLIAM G. CALLOW, J.   The only issue before us on this review is whether a municipality, by ordinance, can impose conditions for subdivision plat approval upon a portion of a plat lying outside its extraterritorial plat approval jurisdiction. The circuit court for Waukesha county, the Hon. HAROLD J. WOLLENZIEN presiding, ruled it can and granted summary judgment in favor of the de-

fendant-petitioner City of Waukesha. The court of appeals reversed. *Brookhill Development, Ltd. v. City of Waukesha,* 99 Wis. 2d 485, 299 N.W.2d 610 (Ct. App. 1980). We affirm the decision of the court of appeals.

I.

Sec. 23.10 of the City of Waukesha Subdivision and Platting Code requires subdivision developers to dedicate a portion of the subdivision land to the city for school purposes or to pay a fee in lieu of such dedication. Insofar as relevant to this review, the school land dedication ordinance provides:

"23.10(1)
". . . .
"(b) **Dedication of Sites.** Within the jurisdiction as set forth in sec. 23.01(2) and within the Waukesha Joint School District No. 1 located within such jurisdiction, the subdivider shall provide and dedicate to the Board of Education, through the City, adequate land to provide for schools and school site needs of the subdivision, as set forth in par. (c)."

The jurisdictional scope of this provision is established by sec. 23.01(2):

"(2) JURISDICTION. These regulations shall govern subdivisions within the City, and may be applied within the unincorporated area within 3 miles of the City over which the City has extraterritorial plat approval jurisdiction."

Brookhill Development, Ltd. (Brookhill), a developer, sought the city's approval of a 104 lot subdivision plat located outside the city limits but partly within the city's extraterritorial plat approval jurisdiction[1] and wholly

[1] Although ordinarily a city's extraterritorial plat approval jurisdiction extends to the unincorporated area within 3 miles of its corporate limits (1½ miles for a fourth class city or village) (sec.

within the Waukesha Joint School District. Because the proposed subdivision also lies partly within the extraterritorial plat approval jurisdiction of the City of Brookfield, Brookhill sought and obtained plat approval from Brookfield.

The City of Waukesha (City), pursuant to sec. 23.10 of its Subdivision and Platting Code, imposed as a condition of plat approval that Brookhill pay the sum of $14,-560 in lieu of land dedication. That figure was calculated using the formula contained in sec. 23.10(1)(c), which requires the payment of the value of one acre of land for every 100 people who will live in the subdivision. Using the figure of 3.5 people per lot, multiplied by 104 lots, the total anticipated population of the subdivision was 364 people. At one acre's value for every 100 people, the fee was to be the value of 3.64 acres or, at $4,000 per acre, $14,560. In short, the City calculated its fee based upon the entire 104 lots, including 100 lots which were not within its extraterritorial plat approval jurisdiction or within the express jurisdictional scope of sec. 23.10.[2]

---

236.02(2), Stats.), when the extraterritorial plat approval jurisdictional areas of two or more municipalities overlap, sec. 66.32, applying through sec. 236.10(2), provides that "the jurisdiction over said overlapping area shall be divided on a line all points of which are equidistant from the boundaries of each municipality concerned so that not more than one municipality shall exercise such power over any area." In this case the parties have agreed that, by application of the foregoing statutes, four of the lots in the plat lie within the extraterritorial plat approval jurisdiction of the City of Waukesha and 100 lie within the extraterritorial plat approval jurisdiction of the City of Brookfield.

[2] Exhibit D, submitted with Brookhill's affidavit in support of its motion for summary judgment, contains the minutes of the August 30, 1977, meeting of the City's Plan Commission. With respect to Brookhill's plat, the following is recorded:

"The question arises as to how much of the plat the City can require conditions on. Representatives of the State feel that it is

Brookhill paid the fee pursuant to an agreement with the City that the money would be held pending the outcome of Brookhill's challenge to the legality of the fee. Brookhill then commenced an action in the circuit court seeking a declaration that the portion of the fee calculated on the 100 lots outside the City's extraterritorial plat approval jurisdiction was not authorized by law and should be returned to Brookhill.[3] In a second count Brookhill alleged that the fee was arbitrary and unreasonable in that it bore no reasonable relationship to the City's obligation to provide schools to the subdivision.

On its first claim, Brookhill moved for summary judgment, and after a hearing on February 12, 1979, the court denied that motion and granted summary judgment in favor of the City instead, ruling that the City's ordinance was validly enacted and that the fee was properly calculated upon the entire plat. In reaching this latter conclu-

very vague, but it does say that if part of the plat is in our jurisdiction, we must approve it. Staff feels it would like to recommend conditions for the entire plat. The statutes also say that not more than one municipality shall exercise extraterritorial jurisdictional power over any area and this whole area is within Waukesha's school land district. Brookfield has not required any school land dedication, so staff feels they have not exercised their extraterritorial jurisdictional power. Also, it appears they haven't exercised the power to change the street names on the plat, so staff doesn't feel there is any overlap of powers. Staff has decided that if we require school land dedication from the whole plat, they can take it through whatever procedure they have to to determine its legality. If it is determined not legal, the City will not get the school land. If we waived jurisdiction, we also would not get school land. If it is legal, we would get the land, so staff feels we have nothing to lose by requiring it as a condition. Since the City must approve the plat, staff recommends as conditions that they pay school land contributions on the entire plat."

[3] Brookhill's first claim for relief seeks the recovery of $13,999.-44, which evidently represents Brookhill's calculation of the portion of the total fee corresponding to the 100 lots over which Brookhill claims the City had no authority to impose the fee.

sion, the circuit court applied the provisions of sec. 236.-13(4), Stats.[4] Reasoning that under the statutes there is no authority for a city to approve only a part of a plat, and further noting that the City of Brookfield, the other municipality in whose extraterritorial plat approval jurisdiction the plat lay, had no school land dedication ordinance, the court concluded that the City's ordinance was the most restrictive and should be applied to the entire plat.

The court of appeals, while agreeing with the circuit court that the ordinance was valid,[5] held that the extraterritorial application of the ordinance was governed by secs. 236.10(2) and 66.32, Stats.,[6] and that under those

---

[4] Sec. 236.13(4), Stats., provides: "Where more than one governing body or other agency has authority to approve or to object to a plat and the requirements of such bodies or agencies are conflicting, the plat shall comply with the most restrictive requirements."

[5] Brookhill, the appellant in the court of appeals, argued, among other things, that the enactment of the school land dedication ordinance was invalid or, in the alternative, its application to the land beyond the City's corporate limits was contrary to sec. 120.50, Stats., because it was being imposed upon land outside the City's corporate limits, and thus usurped the exclusive domain of the fiscal board of the joint school district. Neither the circuit court nor the court of appeals was persuaded by this argument. At oral argument Brookhill abandoned the fiscal board argument for purposes of this review but invited our consideration of the question as a "purely academic matter." We decline that invitation.

[6] Sec. 236.10(2), Stats., provides: "If a subdivision lies within the extraterritorial plat approval jurisdiction of more than one municipality, the provisions of s. 66.32 shall apply."

Sec. 66.32, Stats., provides: "The extraterritorial powers granted to cities and villages by statute, including ss. 62.23(2) and (7a), 66.052, 146.10 and 236.10, shall not be exercised within the corporate limits of another city or village. Wherever such statutory extraterritorial powers shall overlap, the jurisdiction over said overlapping area shall be divided on a line all points of which are equidistant from the boundaries of each municipality concerned so that not more than one municipality shall exercise such power over any area."

provisions the fee should have been calculated only upon the four lots within the City's extraterritorial plat approval jurisdiction. The City petitioned this court for review of that decision.

## II.

In at least one respect, both the City and Brookhill agree as to the effect of secs. 236.10(2) and 66.32, Stats., namely that in this case four lots[7] of the subdivision fall within the City's extraterritorial plat approval jurisdiction and 100 fall within the City of Brookfield's, as defined by those two sections. Thus the question on this review is whether the City's school land dedication ordinance can be applied to land beyond that jurisdiction. The City argues that it can and relies primarily upon sec. 236.13(4). This section applies the most restrictive requirement rule when the requirements of more than one governing body or agency conflict as to the same plat. Crucial to the City's position is its perception that the platting statutes, found generally in Chapter 236, do not authorize the approval or rejection of a part of a plat. Because it is required by statute to approve or reject the whole plat, even though only a part of it is located within its extraterritorial plat approval jurisdiction, the City argues that sec. 236.13(4) provides the mechanism for determining whose plat approval requirements will apply to the whole plat.

## (A)

We interpret the City's position as suggesting that sec. 236.13(4), Stats., is a jurisdictional statute standing

---

[7] While the parties have agreed to the 4 lot/100 lot division for the sake of convenience, the map in the record before us suggests that the line of equidistant points does not carve out even the full four lots.

as an exception to sec. 236.10(2). When the line of equidistant points drawn pursuant to secs. 236.10(2) and 66.32, Stats., goes through the plat, such that part of a single plat is on either side of the line, according to the City's argument the extraterritorial plat approval jurisdiction of the municipality with the most restrictive approval requirements would be extended to the remainder of the plat, and conversely, the jurisdiction of the other municipality would be contracted as to the part of the plat on its side of the line. The court of appeals rejected this argument, concluding that if sec. 236.13(4) were given the effect urged by the City, secs. 236.10(2) and 66.32 would be rendered meaningless. We agree.

Our analysis begins with a close look at the language of sec. 236.13(4), Stats.:

"Where more than one governing body or other agency has authority to approve or to object to a plat and the requirements of such bodies or agencies are conflicting, the plat shall comply with the most restrictive requirements."

The circumstances in which more than one governing body or agency may approve or object to a plat can be gleaned from other sections of the platting statutes. For example, sec. 236.10(1), Stats., expressly designates the approvals necessary to entitle a final plat to be recorded:

"236.10 **Approvals necessary.** (1) To entitle a final plat of a subdivision to be recorded, it shall have the approval of the following in accordance with the provisions of s. 236.12:

"(a) If within a municipality, the governing body, but if the plat is within an area, the annexation of which is being legally contested, the governing bodies of both the annexing municipality and the town from which the area has been annexed shall approve.

"(b) If within the extraterritorial plat approval jurisdiction of a municipality:

"1. The town board; and

"2. The governing body of the municipality if, by July 1, 1958, or thereafter it adopts a subdivision ordinance or an official map under s. 62.23; and

"3. The county planning agency if such agency employs on a full-time basis a professional engineer, a planner or other person charged with the duty of administering zoning or other planning legislation.

"(c) If outside the extraterritorial plat approval jurisdiction of a municipality, the town board and the county planning agency, if there is one."

In addition, sec. 236.13(1), Stats., states that plat approval is contingent upon compliance with municipal, town, or county ordinances; a master plan or official map; requirements of the Department of Industry, Labor and Human Relations; and requirements of the Department of Transportation. Department of Natural Resources approval may be required under sec. 236.13 (2m).

It is not our purpose to distinguish between governing bodies and other agencies, as those terms are used in sec. 236.13(4), nor need we for this opinion. Nonetheless, it is obvious from the foregoing statutory provisions that the legislature intended that any given plat is subject to multiple approvals, and in a situation where a plat lies within the extraterritorial plat approval jurisdiction of a single municipality [that is, an incorporated city or village, sec. 236.02(3), Stats.], approval is required not only by the municipality but by the town board and the county planning agency if there is one.

In contrast, sec. 236.10(2), Stats., addresses a specific instance of overlapping approval authority:

"(2) If a subdivision lies within the extraterritorial plat approval jurisdiction of more than one municipality, the provisions of s. 66.32 shall apply."

Sec. 66.32, Stats., dealing with the extraterritorial powers of municipalities, including specifically the plat approval power under sec. 236.10, states:

"Wherever such statutory extraterritorial powers shall overlap, the jurisdiction over said overlapping area shall be divided on a line all points of which are equidistant from the boundaries of each municipality concerned *so that not more than one municipality shall exercise such power over any area.*" (Emphasis added.)

The legislature recognized a jurisdictional problem involving plats within the extraterritorial plat approval jurisdiction of more than one municipality and resolved it by limiting the jurisdiction of each municipality to that portion of the plat within the boundary established by sec. 236.10(2), Stats. The City's view—that sec. 236.13(4) is applicable in this situation—would produce a result that is the very antithesis of the result intended by secs. 236.10(2) and 66.32. Certainly under the platting statutes, plats will be subject to the approval of more than one authority, and some plats will require approval by more than will others. But just as clearly as these situations are provided for by statute, the overlap of municipal approval authority is prohibited.

As for the City's argument that the statutes only permit the approval of entire plats, we see little significance in this. While it is true that there is no statute expressly authorizing the approval of a part of a plat, we do not see the need for such a provision. Under the existing platting statutes, great latitude is given to governing bodies with respect to the fixing of conditions for plat approval. *See:* sec. 236.45 *et seq.*, Stats. A municipality can impose conditions of approval and otherwise exercise approval authority only with respect to that part of a plat lying within its boundaries or its extraterritorial plat approval jurisdiction. As to any part of a plat lying beyond these limits, it is without authority to impose conditions, so to say it approves or rejects that portion is a fiction. The entire plat is entitled to ap-

proval if that portion over which the municipality has approval authority meets its conditions.

## (B)

We are mindful that in matters of plat approval the legislature has given broad discretion to local governments and that our construction of platting statutes should comport with that discretion. *See: Mequon v. Lake Estates Co.*, 52 Wis.2d 765, 773–74, 190 N.W.2d 912 (1971). Yet even in this we must be faithful to certain principles of statutory interpretation so fundamental as to need no citation of authority: (1) Statutes relating to the same subject should be harmonized to avoid contradictory results; and (2) when two statutes are in conflict, a general statute must yield to a specific one.

Utilizing these basic concepts, we conclude that the provisions of sec. 236.13 (4) and sec. 236.10 (2), Stats., are harmonized by an interpretation which limits the application of sec. 236.13 (4) to those instances where a plat is subject to the approval or objection authority of "layered" governing bodies or agencies as outlined in the platting statutes. In those cases where a plat lies within more than one municipality's extraterritorial plat approval jurisdiction, sec. 236.10 (2) expressly prohibits one municipality from exercising approval authority over any area beyond a point which is equidistant from the boundary of each. And even assuming the statutes in question were in irretrievable conflict, sec. 236.10 (2) and, by reference, sec. 66.32, are specifically addressed to the narrow situation with which we deal and thus must prevail over the more general provisions of sec. 236.13 (4). Accordingly, we hold that sec. 236.13 (4) does not authorize a municipality to impose plat approval condi-

tions on a part of a plat which, pursuant to secs. 236.-10 (2) and 66.32, does not lie within its extraterritorial plat approval jurisdiction.

Concluding as we have, it becomes apparent that the language of the City's school land dedication ordinance itself, which limits its application to those unincorporated areas within 3 miles of the city over which it may exercise extraterritorial plat approval jurisdiction, cannot by its terms be applied in violation of sec. 236.10 (2), Stats. Because the parties have conceded the absence of any factual dispute, Brookhill, not the City, was entitled to summary judgment on the first claim, and the decision of the court of appeals must be affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.