KW HOLDINGS, LLC, a Wisconsin limited liability company, Plaintiff-Appellant,

v.

TOWN OF WINDSOR, a body corporate and politic, Town of Windsor Town Board, the governing body of the Town of Windsor, Town of Windsor Plan Commission, a commission created by the Town of Windsor, and Cheryl Theis, Town of Windsor Clerk-Treasurer, Defendants-Respondents.

Court of Appeals

No. 02–0706. *Submitted on briefs August 9, 2002.—Decided November 21, 2002.*

2003 WI App 9

(Also reported in 656 N.W.2d 752.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Troy M. Hellenbrand, Esq.* of *Hellenbrand & Hellenbrand, S.C.*, Waunakee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Lawrence E. Bechler* and *Matthew J. Fleming* of *Murphy & Desmond, S.C.*, Madison.

Before Vergeront, P.J., Dykman and Deininger, JJ.

¶ 1. VERGERONT, P.J. KW Holdings, LLC, appeals an order of the circuit court that affirmed the decision of the town board of the Town of Windsor rejecting the final plat submitted by KW Holdings. The town board rejected the final plat on the ground that KW Holdings failed to satisfy numerous conditions for plat approval. At the time the town board made this decision, Windsor was contesting annexation by the Village of DeForest of an area containing the property subject to the plat. KW Holdings contends: (1) the

preliminary plat was approved without conditions by operation of law; (2) after DeForest adopted the annexation ordinance, Windsor lost authority to impose public improvement requirements and therefore could not reject the final plat for failure to satisfy them; (3) none of Windsor's reasons for rejecting the plat was valid; and (4) Windsor violated various procedural statutes and ordinances and therefore the rejection of the final plat was invalid.

¶ 2. We conclude: (1) the preliminary plat was not unconditionally approved by operation of law; (2) under WIS. STAT. §§ 236.10(1)(a) and 236.13(2)(a) (1999–2000),[1] Windsor has authority during a legal contest of the annexation to reject the final plat based on a failure to satisfy public improvement conditions; (3) KW Holdings's failure to satisfy the condition that it widen a right of way was a valid reason for rejecting the final plat; and (4) the decision to reject the final plat was not invalid because of failure to comply with procedural requirements. Accordingly, we affirm the circuit court's order.

## BACKGROUND

¶ 3. On May 12, 2000, KW Holdings filed with Windsor a preliminary plat for a residential subdivision lying within Windsor's boundaries. The ninety-day period for review of preliminary plats was extended to September 14, 2000. Windsor conditionally approved the preliminary plat on September 7, 2000, contingent upon satisfaction of conditions established by the Windsor Plan Commission, which included making certain public improvements. On November 13, 2000, DeForest

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

filed a petition for annexation for an area which included the platted land. KW Holdings submitted the final plat to Windsor for approval on November 17, 2000. On December 18, 2000, DeForest adopted an annexation ordinance that annexed the platted land and, on the same date, DeForest approved the plat.

¶ 4. On December 26, 2000, the Windsor clerk notified the plan commission, the town engineer, town planner, and others that the town board was to meet on January 4 to decide if the town was going to contest the annexation. The clerk explained that on advice of counsel no action had been taken on the final plat until DeForest had made a decision on the annexation ordinance. The clerk asked the town engineer, town planner, and town attorney to begin their review of the final plat and have their recommendations prepared for a joint meeting of the plan commission and town board that would take place the week of January 8, 2001, if the board decided to contest the annexation.

¶ 5. The town board did decide to contest the annexation, so on January 5, 2001, Windsor staff posted notices for the joint January 8 meeting to review the final plat and faxed the notice to *The DeForest Times Tribune.* Windsor filed the action contesting the annexation on January 8, 2001, and later that same day, the plan commission and town board held the joint meeting to review the final plat.

¶ 6. The town engineer's report recommended rejection of the final plat because KW Holdings had failed to satisfy most of the conditions of the preliminary plat approval. The town planner's report advised that a number of conditions had not been addressed in the final plat and that the town board should determine if the plat should be approved with conditions or denied. Based on those reports, the plan commission voted to

adopt a draft motion by the town attorney, with certain changes, recommending rejection of the final plat. Before voting on a recommendation, a plan commission member reviewed each point in the draft motion with representatives of KW Holdings. Based on the plan commission's recommendation, as well as the reports from the town engineer and town planner, the town board then voted to reject the plat, specifying twenty-four reasons for the rejection.

¶ 7. KW Holdings sought review by certiorari in circuit court pursuant to Wis. Stat. § 236.13(5), and the circuit court affirmed the decision of the board.

## DISCUSSION

¶ 8. On an appeal to the circuit court under Wis. Stat. § 236.13(5), "[t]he court shall direct that the plat be approved if it finds that the action of the approving authority or objecting agency is arbitrary, unreasonable or discriminatory." In this court we review the decision of the town board, not that of the circuit court, and we apply the same standard to the board's decision as did the circuit court. *Manthe v. Town Bd. of Windsor*, 204 Wis. 2d 546, 551, 555 N.W.2d 167 (Ct. App. 1996). Our review is limited to: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the decision in question. *Id.* Whether Windsor has exceeded its statutory authority is a question of law, which we review de novo. *Id.* However, in reviewing the reasons for the rejection, we affirm if there is adequate support in the

record. *Busse v. City of Madison*, 177 Wis. 2d 808, 812, 503 N.W.2d 340, 341 (Ct. App. 1993). If a municipality rejects a plat for several reasons, it is sufficient if the record supports one of the reasons, and we need not address the others. *Id.* at 813.

*Action on Preliminary Plat—WIS. STAT. § 236.11(1)(a)*

¶ 9. KW Holdings argues that the preliminary plat was automatically approved without conditions by operation of law under WIS. STAT. § 236.11(1)(a) because the town board did not make a definite and final decision on it by September 14, 2001. According to KW Holdings, the board's decision of conditionally approving the preliminary plat on September 7, 2001, was not a definite and final decision because two of the conditions involved subsequent decisions by other entities. The two conditions were: (1) in lieu of payment for parkland,[2] a park improvement credit for upgrading current parks, "provid[ing] this is acceptable to the Town Board and Park Commission," and (2) storm water drainage seventy-five feet wide, except that "the town will act on what the county recommends regarding requesting . . . a 50-ft variance." Since, in KW Holdings's view, the preliminary plat was automatically approved by operation of law without conditions, the

---

[2] The conditions established by the plan commission, which were adopted by the board and included in the engineer's August 24, 2000 letter, stated that the park areas added up to 5.17 acres. Under TOWN OF WINDSOR LAND AND SUBDIVISION ORDINANCE § 8.5, when the amount of parkland in a subdivision falls below certain minimum requirements, Windsor may accept fees in lieu of parkland, according to a specified formula.

board had no authority to reject the final plat because KW Holdings did not meet certain conditions.

¶ 10. WISCONSIN STAT. § 236.11(1)(a) provides in part:

> Within 90 days the approving authority, or its agent authorized to approve preliminary plats, shall take action to approve, approve conditionally, or reject the preliminary plat and shall state in writing any conditions of approval or reasons for rejection, unless the time is extended by agreement with the subdivider. Failure of the approving authority or its agent to act within the 90 days, or extension thereof, constitutes an approval of the preliminary plat.

¶ 11. When we construe a statute, our aim is to ascertain the intent of the legislature; and we consider first the language of the statute itself. *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). If that plainly expresses the legislature's intent, we apply that language to the facts at hand. *Id.*

¶ 12. We do not agree with KW Holdings's construction and application of WIS. STAT. § 236.11(1)(a). The plain language of the statute requires only that the board "take action to approve, approve conditionally, or reject the preliminary plat and shall state in writing any conditions of approval or reasons for rejection"; it does not specify that no condition may depend upon the subsequent decision of another entity. The board did act within the agreed upon extension to approve the preliminary plat conditionally, and it stated in writing the conditions of approval. The two conditions that KW Holdings points to represent the board's final decision on what the board required, with the inclusion of a more favorable result for KW Holdings if other entities approved.

¶ 13. "The purpose of a preliminary plat is to give the approving authority an idea of the plan for the subdivision and to enable [the authority] to give the subdivider some assurance that he is proceeding in an acceptable manner." *Lakeshore Dev. Corp. v. Plan Comm'n of Oconomowoc Lake*, 12 Wis. 2d 560, 568, 107 N.W.2d 590 (1961). The requirement of written notice of the conditions is to provide the developer with notice of what must be done in order for the plat to be finally approved. *See State ex rel. Albert Realty Co. v. Village Board of Brown Deer*, 7 Wis. 2d 93, 99, 95 N.W.2d 808 (1959) (purpose of written statement of reasons for rejection is to give the developer the opportunity to cure any objections to the plat). The written conditions relating to parkland and to storm water drainage were sufficiently definite to give KW Holdings notice of what had to be done to comply with those conditions.

¶ 14. KW Holdings relies on *State ex rel. Lozoff v. Board of Trustees of Hartland*, 55 Wis. 2d 64, 197 N.W.2d 798 (1972). There the court concluded a preliminary plat was constructively approved by operation of WIS. STAT. § 236.11(1)(a) because the only action the approving authority took within the statutory time period was to table consideration of the preliminary plat. That, the court held, was not a type of action specified in § 236.11(1)(a). *Id.* at 70.[3] We do not agree

---

[3] KW Holdings also relies on *Miswald v. Waukesha County*, 202 Wis. 2d 401, 550 N.W.2d 434 (1996), which does not even address WIS. STAT. § 236.11(1)(a), but is concerned with what constitutes a final decision for purposes of the timeliness of an appeal of the decision of a board of adjustment under WIS. STAT. § 59.99(10). The court concluded that a decision that expressly stated that the matter might be taken up at the next scheduled hearing and was subject to change or modification was not the

with KW Holdings that tabling consideration of a preliminary plat is analogous to the action the board took in this case.

¶ 15. We conclude that the town board acted to conditionally approve the preliminary plat as required by WIS. STAT. § 236.11(1)(a), and the preliminary plat was therefore not approved without conditions by operation of that section.

*Windsor's Authority to Require Public Improvements under WIS. STAT. §§ 236.10(a) and 236.13(2)(a)*

■

¶ 16. WISCONSIN STAT. § 236.10(a) addresses final plat approvals in the context of annexation contests, and provides:

> **(1)** To entitle a final plat of a subdivision to be recorded, it shall have the approval of the following in accordance with the provisions of s. 236.12:
>
> (a) If within a municipality, the governing body, but if the plat is within an area, the annexation of which is being legally contested, the governing bodies of both the annexing municipality and the town from which the area has been annexed shall approve.

KW Holdings contends that this statute does not authorize Windsor to condition final plat approval on public improvements required by its ordinance, because a more specific statute governs, WIS. STAT. § 236.13(2)(a):

final decision; rather, the decision resulting from the next hearing was. *Miswald*, 202 Wis. 2d at 408–09. The facts and the statute at issue in *Miswald* are too dissimilar from those in this case for *Miswald* to have any application here.

(2)(a) As a further condition of approval, the governing body of the town or municipality within which the subdivision lies may require that the subdivider make and install any public improvements reasonably necessary . . . to ensure that he or she will make those improvements within a reasonable time.

According to KW Holdings, since the annexation is presumed valid until declared invalid by a court, the proposed subdivision lies outside Windsor and within DeForest, and under § 236.13(2)(a) only DeForest may establish public improvement requirements.[4]

¶ 17. In construing these statutes, we bear in mind that since they relate to the same subject matter, we read them together and harmonize them if possible. *Brookhill Dev. Ltd. v. City of Waukesha,* 103 Wis. 2d 27, 36, 307 N.W.2d 242 (1981).

¶ 18. We conclude that WIS. STAT. § 236.13(2)(a) does not restrict Windsor's authority to impose public improvements as conditions for plat approval during a contested annexation. Since Windsor is legally contesting the annexation, the plain language of WIS. STAT. § 236.10(1)(a) requires that both the annexing municipality—DeForest—and the town from which the area has been annexed—Windsor—approve a final plat

---

[4] KW Holdings also argues that under WIS. STAT. § 236.45(3) Windsor may not adopt an ordinance regulating subdivisions within its extraterritorial plat-approval jurisdiction, because § 236.45(3) allows a municipality to do so only if it has the right to approve or object to plats within that area under WIS. STAT. § 236.10(1)(b)2 and (2), and Windsor does not have that right. However, Windsor does not contend that it has the right to approve or object to plats under those subsections, but rather relies on § 236.10(1)(a). Accordingly, we do not address this argument.

of a subdivision in accordance with the procedures established in Wɪs. Stat. § 236.12. There is no indication in § 236.10(1)(a), or any other section in § 236.10, that the legislature intends to limit the authority of the town from which the area is annexed to impose conditions for approval that the town is otherwise authorized to impose. We do not find any such intent expressed in § 236.13, either. Section 236.13(1) governs the conditions that must be met for preliminary and final plat approval, and subsecs. (2) and (2m) provide for additional conditions that may be imposed. None of these subsections address what happens when an annexation contest is pending. The phrase in para. (2)(a) "governing body of the town or municipality within which the subdivision lies" refers to the governing body that is approving the preliminary plat or final plat—and, under § 236.10(1)(a), in the case of a contested annexation, that is both the annexing municipality and the town from which the area is annexed.

¶ 19. The legislature has expressly addressed the potential conflict that may arise when two governmental bodies are required to approve a plat. Wɪsᴄᴏɴsɪɴ Stat. § 236.13(4) provides that "[w]here more than one governing body or other agency has authority to approve or to object to a plat and the requirements of such bodies or agencies are conflicting, the plat shall comply with the most restrictive requirements." Thus, any plat approved by both parties to the annexation contest will meet the requirements of the party that prevails in the annexation dispute.[5]

---

[5] We do not fully understand KW Holdings's argument that under Wɪs. Stat. § 236.13(4) certain of Windsor's ordinance requirements are inapplicable because they conflict with DeForest's and are less restrictive. If the requirements Windsor imposes conflict with those imposed by DeForest, the plat must

¶ 20. We do not agree with KW Holdings that *Rice v. City of Oshkosh*, 148 Wis. 2d 78, 435 N.W.2d 252 (1989), supports its argument that only one governing body may exercise authority under Wis. Stat. § 236.13(2)(a) to impose conditions of public improvements in a contested annexation. *Rice* construed § 236.13(2)(a) in the context of extraterritorial plat approval jurisdiction, not a contested annexation. In *Rice*, the subdivision was within a town and also within the extraterritorial plat approval jurisdiction of a city. Under Wis. Stat. § 236.02(5), "extraterritorial plat approval jurisdiction" is defined as "the unincorporated area within 3 miles of the corporate limits of a first, second, or third class city, or 1½ miles of a fourth class city or a village." Since the subdivision lay within both the town and the extraterritorial plat approval jurisdiction of the city, both had to approve the plat. Wis. Stat. § 236.10(1)(a) and (b).[6] The town approved the plat conditioned on compliance with its public improvement

---

comply with the more restrictive. Section 236.13(4). If they do not conflict, the plat must comply with all of them. Wis. Stat. § 236.10(1)(a). There may be situations where application of this section is problematic. However, KW Holdings does not relate this argument to the failure to widen a right of way, which, we conclude later in this decision, was a valid basis for rejecting the final plat. Accordingly, we need not address this argument further.

[6] Wisconsin Stat. § 236.10(1)(b) provides:

(1) To entitle a final plat of a subdivision to be recorded, it shall have the approval of the following in accordance with the provisions of s. 236.12:

. . . .

(b) If within the extraterritorial plat approval jurisdiction of a municipality:

1. The town board; and

372

requirements, and the city conditioned approval on compliance with its public improvements requirements. *Id.* at 80–81. The court concluded that § 236.13(2)(a) plainly did not give the city the authority to do this, because the city was not the governing body within which the subdivision lay. *Id.* at 84–85. The court also relied on the Interpretative Commentary to the section, which stated: "The authority under [§ 236.13(2)(a)] to require installation of public improvements does not apply extraterritorially." *Id* at 85. There is nothing in either the reasoning or the result of *Rice* that indicates legislative intent to restrict a town that is contesting an annexation from exercising the authority it would have under § 236.13(2)(a) in the absence of the annexation.

¶ 21. KW Holdings also relies on *Brookhill Development Ltd.*, 103 Wis. 2d at 27, to support its argument. However, *Brookhill* is concerned with the authority of two municipalities when part of a plat lies within the extraterritorial plat approval jurisdiction of one, and the rest of the plat lies within the extraterritorial plat approval jurisdiction of the other. The court held in *Brookhill* that under Wis. Stat. § 236.10(2), Wis. Stat. § 66.0105 (then numbered Wis. Stat. § 66.32) plainly applies to divide the overlapping jurisdiction so that not more than one municipality exercises its extraterrito-

---

2. The governing body of the municipality if, by July 1, 1958, or thereafter it adopts a subdivision ordinance or an official map under s. 62.23; and

3. The county planning agency if such agency employs on a full-time basis a professional engineer, a planner or other person charged with the duty of administering zoning or other planning legislation.

rial powers over the same area.[7] *Brookhill Dev. Ltd.*, 103 Wis. 2d at 35. The court's reference to a prohibition on "the overlap of municipal approval authority," *id.*, was to the specific prohibition in § 236.10(2) and § 66.0105, not to a general prohibition that would apply despite the plain language of § 236.10(1)(a).

¶ 22. It is true, as KW Holding contends, that under WIS. STAT. § 66.0217(8)(c) an annexation ordinance is effective upon enactment of the ordinance; and it continues in effect until declared invalid by a court. *State ex rel. Madison v. Monona*, 11 Wis. 2d 93, 96, 104 N.W.2d 158 (1960). However, precisely because an annexation may be declared invalid by a court through procedures established by statute to contest it, § 66.0217(11), the legislature has chosen in WIS. STAT. § 236.10(1)(a) to require the approval of the town from which an area is being annexed as well as the annexing municipality when there is a legal contest. The legislature has evidently decided that it is better to require approval of both governing bodies involved in the dispute, since either might prevail, and that is a policy judgment for the legislature to make.

---

[7] WISCONSIN STAT. § 236.10(2) provides that if a subdivision lies within the extraterritorial plat approval jurisdiction of more than one municipality, WIS. STAT. § 66.0105 applies. Section 66.0105 provides:

> **Jurisdiction of overlapping extraterritorial powers.** The extraterritorial powers granted to cities and villages by statute, including ss. 30.745, 62.23 (2) and (7a), 66.0415, 236.10 and 254.57, may not be exercised within the corporate limits of another city or village. Wherever these statutory extraterritorial powers overlap, the jurisdiction over the overlapping area shall be divided on a line all points of which are equidistant from the boundaries of each municipality concerned so that not more than one municipality shall exercise power over any area.

¶ 23. Accordingly, we conclude that Windsor had the authority under Wis. Stat. §§ 236.10(1)(a) and 236.13(2)(a) to condition approval of the plat on satisfying public improvement requirements of its subdivision ordinances.

*Validity of Reasons for Final Plat Rejection*

¶ 24. Although Windsor listed twenty-four reasons for rejecting the final plat, we address only one. As we have noted above, there need be only one valid reason. *Busse*, 177 Wis. 2d at 813. We conclude that KW Holdings's failure to widen a right of way as required in the conditions imposed on the preliminary plat is a valid reason for rejecting the final plat.[8] KW Holdings argues that the width of the right of way is a public improvement under the 1987 Ordinance § 2.1(a)(13), and, because of the annexation, Windsor does not have the authority to reject the final plat for failure to meet this condition. However, we have already concluded that Windsor has authority to impose public improvements as a condition of plat approval under Wis. Stat. §§ 236.10(1)(a) and 236.13(2)(a). Since KW Holdings does not present any other basis for the invalidity of this reason for denial, we conclude the board properly rejected the final plat for this reason.

---

[8] One of the conditions imposed when the preliminary plat was conditionally approved was that the right of way from Wolf Hollow Road must be widened to 135 feet from the 100 feet proposed.

*Claims of Procedural Errors in Final Plat Approval*[9]

¶ 25. KW Holdings argues that Windsor failed to comply with a number of procedural requirements, and,

---

[9] In its first brief, KW Holdings made a one-sentence argument that the clerk "did *not* publish notice of the meeting on January 8, 2001, in the official Town newspaper, as required by [the 1987 Ordinance] sections 4.4(a)(1) and 4.3(a)(2)." There is no citation to the record except for the citation to these ordinance sections. Under § 4.4(a)(1) the clerk "shall give notice of the Plan Commission's meeting" on the final plat in the manner prescribed in § 4.3(a)(2), which provides for notice "by listing [the plan commission's review] as an agenda item in the Commission's meeting notice published in the official Town newspaper." In response, Windsor points to the lack of any record citation to support KW Holdings's argument, and refers us to a copy of the agenda for the January 8, 2001 meeting indicating that notice was faxed to *The DeForest Times Tribune* on January 5. In reply, KW Holdings asserts that notice was faxed on January 5, 2001, a Friday, to *The DeForest Times Tribune* for the Monday, January 8 meeting, but that the newspaper is a weekly newspaper, published on Thursdays. KW Holdings provides a record cite for this latter proposition to a publication notice for a DeForest rezoning ordinance relating to the preliminary plat, from which one may reasonably infer that the newspaper is a weekly newspaper published on Thursdays.

We decline to address the merits of KW Holdings's argument on the newspaper notice. Windsor did not have an opportunity to respond to this argument, because it was so inadequately identified in KW Holdings's first brief, and it was not an argument that KW Holdings developed in the trial court. (In the trial court, KW Holdings challenged notice of the January 8 meeting on other grounds under other ordinance provisions and the open meetings law; the trial court ruled against KW Holdings and it has not pursued these issues on appeal.) Moreover, although the reply brief does identify the argument, it does not develop it sufficiently to permit us to address it.

as a result, its rejection of the final plat was invalid. We address each in turn and conclude none provides a basis for invalidating the rejection of the final plat.

## 1. *Public Hearing*

¶ 26. KW Holdings argues that the town clerk failed to schedule a public hearing on the final plat and give notice of the hearing as required by the TOWN OF WINDSOR SUBDIVISION ORDINANCE (1979 Ordinance).[10] Windsor responds that it did not need to hold a public hearing on the final plat because the requirement for that hearing in the 1979 Ordinance is inconsistent with provisions in the TOWN OF WINDSOR LAND DIVISION AND SUBDIVISION ORDINANCE (1987 Ordinance), and, therefore, was repealed.[11]

¶ 27. Under the 1987 Ordinance all other ordinances or parts of ordinances were repealed only to the extent that any part was "inconsistent or conflicting" with the 1987 Ordinance. 1987 Ordinance § 1.7. In *Manthe*, we held that this language is consistent with the concept of repeal by implication, which occurs when "the latter ordinance contains provisions so contrary to or irreconcilable with those of the earlier ordinance that only one of the two ordinances can stand in force." 204 Wis. 2d at 584. While repeal by implication is not favored, *id.*, the purpose of this rule is to aid in ascertaining the intent of the legislative body, and it

[10] The record shows this ordinance was adopted in 1978. Nevertheless, because the parties and the court call it the 1979 Ordinance, we use that term.

[11] There is no statutory requirement for a public hearing on either a preliminary or a final plat.

377

therefore "does not control an otherwise clear intent, evidenced by the act itself." *State ex rel. Thompson v. Beloit City School Dist.*, 215 Wis. 409, 418, 253 N.W. 598 (1934).

¶ 28.　The 1979 Ordinance addressed the procedure for preliminary plats and final plats in separate sections, and for each required notification of commissions and boards, responses from them, and a public hearing before the town board "[with notice] to all property owners within 200 feet of the proposed subdivision." 1979 Ordinance §§ 3.2; 3.4. The 1987 Ordinance retained those procedures for preliminary plats, but changed time limits and added numerous, specific requirements for each step in the process, including additional requirements for notice of the public hearing. *Cf.* 1979 Ordinance §§ 3.2, 3.3 with 1987 Ordinance §§ 4.2(h), 4.3(b).[12] With respect to final plats, the 1987 Ordinance also retained the requirement of notification of board and commissions and responses from them, again adding details and changing the time limits, and, as with the preliminary plat procedure, it added many details to every other step in the process, including review and recommendations by the town engineer and plan commission; however, there is no provision for a public hearing. *Cf.* 1979 Ordinance § 3.4 with 1987 Ordinance § 4.4.

---

[12] The 1987 Ordinance § 4.3(b) provides:

　　The Town Clerk shall schedule a public hearing on the Preliminary Plat before the Town Board. The Town Clerk shall give notice of the Town Boar[d]'s review and public hearing on the Preliminary Plat or certified survey by listing it as an agenda item in the Board's meeting notice published in the official Town newspaper. The notice shall include the name of the applicant, the address of the property in question and the requested action. Property owners within two hundred (200) feet of the proposed land division shall receive written notice of the public hearing.

378

¶ 29. We agree with Windsor that a public hearing on the final plat, as provided in the 1979 Ordinance, is inconsistent and irreconcilable with the procedures established in the 1987 Ordinance. The only reasonable construction of 1987 Ordinance §§ 4.3 and 4.4 is that the town board did not intend that a public hearing be held on the final plat. These sections are not silent on this point; rather, by comprehensively addressing the specific procedures for preliminary and final plat approval, and retaining and elaborating on the requirement of a public hearing for a preliminary plat but omitting reference to a public hearing for a final plat, these sections demonstrate an intent not to require that hearing.[13]

[13] KW Holdings also argues that the trial court erred in deciding that the public hearing requirement in the 1979 Ordinance was implicitly repealed because the court made the erroneous assumption that WIS. STAT. § 236.11(1)(b) was enacted after 1979. Section 236.11(1)(b) provides: "[i]f the final plat conforms substantially to the preliminary plat as approved, including any conditions of that approval, and to local plans and ordinances adopted as authorized by law, it is entitled to approval." Because, as we noted above, we review the decision of the town board, not that of the trial court, we need not address this argument. *Manthe v. Town Bd. of Windsor*, 204 Wis. 2d. at 551. However, we agree with Windsor's explanation of the point the trial court intended to make. While § 236.11(1)(b) was enacted before the 1979 Ordinance, the section was amended later (by Laws of 1979, ch. 248, § 4) to make the change the trial court considered relevant. Since the municipality could no longer revise its position at the final plat stage if the final plat conformed substantially to the preliminary plat as approved, including conditions, there was no longer a purpose served by a public hearing on the final plat.

## 2. *Compliance with* WIS. STAT. *§ 62.23(5)*

■■

¶ 30. KW Holdings contends that Windsor violated WIS. STAT. § 62.23(5), which provides:

> **(5)** MATTERS REFERRED TO CITY PLAN COMMISSION. The council, or other public body or officer of the city having final authority thereon, shall refer to the city plan commission, for its consideration and report before final action is taken by the council, public body or officer, the following matters: . . . .Unless such report is made within 30 days, or such longer period as may be stipulated by the common council, the council or other public body or officer, may take final action without it.

As we understand KW Holding's argument, Windsor violated this section in two ways: (1) the town clerk, not the town board, referred the final plat to the plan commission for its review, and (2) the town board held a joint meeting with the plan commission at which the plan commission voted on its recommendation, and the board then adopted the plan commission's recommendation.

¶ 31. KW Holdings does not explain why the town clerk may not refer the final plat to the plan commission on behalf of the board, nor what in the statute requires that the plan commission report to the board before the meeting at which the board decides. The purpose of this statute, plainly expressed in its language, is to require that the plan commission have the opportunity to review and make a recommendation on a final plat before the board or other entity makes a final decision, but not to require the board to wait more than thirty days for the plan commission's report. The plan commission here did have that opportunity. We conclude there was no violation of this section.

### 3. *Time Periods in Ordinance*

¶ 32. KW Holdings asserts that because various time periods specified in the ordinance were not adhered to, the town board had no authority to reject the final plat. We conclude that the failure of town officials and employees to adhere to the time periods KW Holdings relies on does not prevent the board from rejecting the final plat. We address first the time limits for the recommendation of the plan commission and the town engineer.

¶ 33. 1987 Ordinance § 4.4(a)(5) provides in part:

> The recommendations of the Plan Commission and Town Engineer shall be made within thirty (30) days of the filing of the Final Plat. The Town Engineer shall examine the plat or map and final plans and specifications of public improvements for technical details and if he finds them satisfactory, shall so certify in writing to the Plan Commission. If the plat or map or the plans and specifications are not satisfactory, the Town Engineer shall return them to the owner and so advise the Plan Commission.

1987 Ordinance § 4.4(b)(4) provides:

> The Plan Commission shall, within thirty (30) days of the date of filing of the Final Plat with Town Clerk, recommend approval, conditional approval or rejection of the Plat and shall transmit the Final Plat and application along with its recommendations to the Town Board. The Plan Commission may hold the matter in abeyance if there is incomplete or inadequate information.

¶ 34. KW Holdings premises its argument on the use of the word "shall" and the rule of statutory construction that the use of "shall" is presumed to be mandatory, *Wagner v. State Medical Examining Board,* 181 Wis. 2d 633, 643, 511 N.W.2d 874 (1994). However, the rule regarding statutory time periods is that they may be either directory or mandatory. *State ex rel. Jones v. Div. of Hearings and Appeals*, 195 Wis. 2d 669, 672, 536 N.W.2d 213 (Ct. App. 1995). Generally, a statute presenting the time within which public officials are required to perform an act is directory, unless the statute denies the exercise of power after such time, or the nature of the act or the statutory language shows that the time was intended to be a limitation. *Id.* at 672–73. In determining whether a provision is directory or mandatory, the object of the court is to ascertain the legislative intent. *Wagner*, 181 Wis. 2d at 643. We determine legislative intent by looking at the following factors: (a) the existence of penalties for failure to comply with the time limits, (b) the statute's nature, (c) the legislative objectives of the statute, and (d) the consequences to the parties for failure to comply. *Id.* Applying these factors, we conclude that the time limits in these sections are directory rather than mandatory.

¶ 35. First, there is no penalty imposed for the failure of the plan commission or the town engineer to act within thirty days of the filing of the final plat. Moreover, nothing in these sections suggests that the town board may not exercise its authority to decide whether to approve or reject a final plat because either the plan commission or the town engineer has not made their recommendations within thirty days. Indeed, the town board may make its decision without the plan commission's recommendation if the recommendation

is not timely under WIS. STAT. § 62.23(5). Similarly, nothing in these sections suggests that the board may not consider the recommendation of the town engineer or the plan commission because they are made later than thirty days from the filing of the final plat. Second, this ordinance is a "land division and subdivision ordinance," the purpose of which is to "to promote the public health, safety, convenience and general welfare of the community." 1987 Ordinance § 1.2(b). Third, the specific objectives of § 4.4(a)(5) and (b)(4) are to facilitate this general purpose by allowing the town board to have the benefit of the recommendations of the town engineer and plan commission before it makes its decision, which it must make within sixty days of the filing of the final plat or the plat is approved by operation of law. WIS. STAT. § 236.11(2).

¶ 36. Fourth, the consequence to the parties favors construing the time periods as directory. The consequences to Windsor of prohibiting the board from denying a final plat, regardless of whether it substantially conforms to the preliminary plat including the conditions imposed, is a serious threat to the town's ability to regulate subdivisions for the benefit of the community. KW Holdings argues that the consequence of non-compliance with 1987 Ordinance § 4.4(a)(5) is prejudicial to the owner because, if the town engineer returns the final plat within thirty days of filing as unsatisfactory, the owner has the opportunity to cure deficiencies before the board decides the matter. However, this section does not require that the town engineer advise the owner of the specific deficiencies, nor is there any ordinance provision or statute that entitles the owner to a specified period of time between return of an unsatisfactory final plat from the town engineer and the board's decision. The board may make a deci-

383

sion based on the town engineer's recommendation and the plan commission's recommendation without waiting until the owner has cured the deficiencies. We therefore conclude that allowing the owner time to cure deficiencies in the final plat is not a purpose of specifying thirty days for the town engineer to make a recommendation; thus, we do not view that purpose, or the thwarting of that purpose, as a significant factor in deciding whether the time limits are mandatory or directory.

■■■

¶ 37. Our analysis is much the same with respect to the provision that the town clerk shall, within two days of the filing of the final plat, provide copies of the final plat to certain agencies called "objecting agencies," 1987 Ordinance § 4.4(a)(2), and to the plan commission, town engineer and utility companies. 1987 Ordinance § 4.4(a)(5).[14] These sections address the duty of the town clerk; there is no penalty for the town clerk; and

[14] The 1987 Ordinance § 4.4 provides in part:

(2) The Town Clerk shall, within two (2) days after filing, transmit two (2) copies to the appropriate sanitary district, four (4) copies to the County Planning Agency, two (2) copies to the Director of the Planning Function in the Wisconsin Department of Development, additional copies to the Director of the Planning Function for retransmission of two (2) copies each to the Wisconsin Department of Transportation if the subdivision abuts or adjoins a state trunk highway or a connecting street and the Wisconsin Department of Industry, Labor and Human Relations if the subdivision is not served by a public sewer and provision for service has not been made, and the original Final Plat and adequate copies to the Plan Commission. The County Planning Agency, the Wisconsin Department of Development, the Wisconsin Department of Transportation, and the Wisconsin Department of Industry, Labor and Human Relations shall be hereinafter referred to as objecting agencies.

. . . .

384

there is no indication of an intent to preclude the board from rejecting a final plat because the town clerk did not comply with the time periods. The evident purpose of these provisions is to provide all the entities whose responses the town board either may or must consider with copies of the final plat in an expeditious manner, in order to facilitate their review and the board's final decision-making. That purpose is not served by precluding the board from making a particular decision once it has received the responses.[15]

(5) The Town Clerk shall refer two (2) copies of the Final Plat to the Plan Commission, one (1) copy to the Town Engineer, and a copy each to the telephone and power and other utility companies. The abstract of title or registered property report may be referred to the Town Attorney for his examination and report. The Town Clerk shall also refer the final plans and specifications of public improvements to the Town Engineer for review.

[15] KW Holdings also argues that the town clerk did not send copies of the final plat at all to certain agencies, termed "objecting agencies," as required by 1987 Ordinance § 4.4(a)(2), and therefore Windsor was not able to inscribe its approval on the final plat. KW Holdings points out that § 4.4(c)(1) of the 1987 Ordinance prohibits the town board from inscribing its approval unless the clerk certifies on the face of the final plat "that the copies were forwarded to objecting agencies as required herein, the date thereof and that no objections have been filed within twenty (20) days or, if filed, have been met." There is no merit to this argument for two reasons: first, the town board's decision to reject the final plat had nothing to do with this requirement; second, § 4.4(a)(2) is based on Wis. Stat. § 236.12(2) which requires the subdivider to submit to the clerk the copies and the list of the authorities to which they must be sent; in the alternative, the subdivider may submit the original plat to the department of administration, which will then make and send the requisite copies at the subdivider's expense. The

¶ 38. It may be, as KW Holdings appears to argue, that even when time periods are directory, a public official's failure to adhere to them could be arbitrary or unreasonable. However, we conclude Windsor had a reasonable basis for waiting to begin the review process until it was certain it had the authority to act under WIS. STAT. § 236.10(a), and it did make the final decision within the sixty-day period prescribed in WIS. STAT. § 236.11(2). In addition, although KW Holdings has made general allegations of prejudice resulting from Windsor's failure to adhere to the directory time periods, it does not explain how that failure prevented it from satisfying any particular condition or curing any particular deficiency, let alone all twenty-four that were the reasons for the rejection.

*By the Court.*—Order affirmed.

record shows KW Holdings did the latter. The town clerk therefore could have certified that copies were sent to the objecting agencies.